## CALLISON v. STATE.
### No. 12947.

Court of Civil Appeals of Texas. Dallas.

Dec. 14, 1940.

Harvey W. Lindsay, of Dallas, for appellant.

Andrew Patton, Dist. Atty., and E. G. Moseley and Harold McCracken, Asst. Dist. Attys., all of Dallas, for appellee.

BOND, Chief Justice.

This suit was instituted in the name of the State of Texas by relator Robert L. Jones, Chief of Police of the City of Dallas, and prosecuted by the Honorable Andrew Patton, District Attorney of Dallas County, against W. E. Callison, for the purpose of condemning, confiscating and destroying certain property belonging to Callison, claimed to be gambling paraphernalia and seized by the Chief of Police. The suit was brought under and by virtue of Arts. 636, 637 and 638 of the Penal Code of the State of Texas, Vernon's Ann.P.C. arts. 636–638. The defendant sought return of the property on the ground, (1) that it was not of that character denominated and inhibited by statute as gaming tables, devices and other equipment, and (2) that it was not being used or exhibited for the purpose of gaming. On hearing before a district judge of Dallas County, the property was

determined to be gaming devices per se, to-wit, punch·boards, prohibited by the Penal Code of the State of Texas as gaming devices, and the court ordered "50,000 punch boards of various sizes, shapes and names, now in possession of the sheriff of Dallas County, Texas, owned and possessed by the defendant, destroyed."

Our Penal Code, Art. 619, makes it punishable for any person, directly or through another, to keep or exhibit for the purpose of gaming, any bank or gaming device, whether named or not; Art. 623 (Id.) defines the word "exhibit" as intending "to signify the act of displaying the bank or game for the purpose of obtaining bettors"; Art. 636 (Id.) authorizes the sheriff or other peace officer to seize and take possession of all gaming devices, and to keep same pending a hearing before a court to show cause why such articles should not be destroyed; and Art. 637 provides procedure of trial to determine the character of the property seized as being gambling devices, and whether same *was being used for gaming purposes.* This last Article expressly provides that "Property not of that character or *not so used* shall be ordered returned to the person entitled to possession of the same." (Italicized for emphasis.)

Under the verbiage of the statute, a gambling device is determined, not only by its character but by the purposes for which it is exhibited. It is a game, having a keeper, dealer, or exhibitor. Its character is based upon the principle of one against many—the keeper, dealer, or exhibitor against the bettors, directly or indirectly, and, to come under the condemnation, it must be used or exhibited; that is, displayed for the purpose of obtaining bettors. It is not essential that it be shown that such devices were actually in use at the time of seizure to bring them under the condemnation of the law, if it be shown, directly or otherwise, that they were exhibited or displayed for the purpose of gaming. The mere fact that a gaming device is found in possession of another does not authorize its confiscation, condemnation and destruction, unless it be shown that the device is being used or exhibited in such manner as to signify the purpose of gaming.

The testimony in this case is undisputed. The defendant owned and had in his possession, locked in his warehouse, a quantity of materials and boards, commonly known as "punch boards". The materials seized were parts (not assembled) of punch boards, to make complete devices. The defendant was not using the boards for any purpose other than for sale, or offer of sale, to wholesale dealers in and out of Texas. He was a designer of boards and novelties, and obtained such for the purpose of sale only. He was not the keeper, dealer, or exhibitor of such devices for the purpose of obtaining bettors. On information that the boards were stored in defendant's warehouse, the officer clothed himself with a search warrant, broke open the warehouse, and seized all materials designed to put up punch boards, as well as all completed boards, with printed matter and directions for their use.

There is no question that the punch boards were designed for gambling purposes, that they can be used for no other purpose, and that the materials seized were designed to make punch boards. A brief description will suffice to show that the boards were gaming devices, and that they could serve no useful or legitimate purpose; the boards contain possibly 200 to 300 holes, spreading over the faces, in which are sealed pieces of paper bearing numbers which correspond with exposed numbers appearing on the boards. In accordance with attached instructions, a consideration —ordinarily 1¢, 5¢, 10¢, 25¢, etc.—is paid for the privilege of punching one of these holes, and, if the piece of paper punched out bears a number corresponding with a number on the board, a prize, either of money or merchandise, is awarded. The numbers punched from the holes control the amount of money or kind and value of merchandise won—if any. A card or sticker on the face of the board indicates the winning numbers and, unless the piece of paper punched from the hole bears a winning number, no prize is awarded by the keeper or exhibitor. Many of the concealed pieces of paper—and we might say, a great majority of them—do not bear winning numbers; thus, the player gets no prize, and, of course, loses his money paid for the privilege of a chance to win against overwhelming odds. Obviously, the punch boards are lotteries; purely games of chance or luck. The numbers are hidden from view until punched from the board by players. No skill is exercised in the operation of the game, and the boards can be used for no purpose other than gaming; they were designed for that purpose only.

The aim of the statute, under which this proceeding is brought, is to prohibit

the use or exhibition of all possible games that fall under the classification of lotteries or gambling devices. The character of the property seized, that is, its make-up, does not authorize its confiscation and destruction. The boards were stored and locked in a warehouse, and were, in no manner, used or exhibited for the purpose of gaming or obtaining bettors.

In the enactment of the statutes under which this action was brought, the Legislature did not see fit to condemn all property that might be used for gaming, and authorize its destruction, unless it be shown that such property was designed for gaming and was, at the time of seizure, being used for the purpose of gaming. Thus, courts cannot extend the statute so that gaming devices may be confiscated and destroyed in the absence of evidence that same were being used or exhibited for gaming. That such was not defendant's purpose, is evident. The property was so stored that it could not reasonably be said that it was exhibited, and, certainly, it was not being used for gaming.

The judgment of the court below is reversed, the order condemning, confiscating and destroying defendant's property is set aside, and the cause is remanded with instructions that the property seized be ordered returned to defendant.

Reversed and remanded with instructions.