CONTACT, INC., A NEBRASKA NONPROFIT CORPORATION, APPELLEE, v. STATE OF NEBRASKA ET AL., APPELLANTS.

324 N.W.2d 804

Filed September 24, 1982. No. 44415.

Paul L. Douglas, Attorney General, Mel Kammerlohr, and Mark D. Starr, for appellants.

Robert R. Gibson and Rosenberg, Gibson & Taute, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, and CAPORALE, JJ.

PER CURIAM.

The State appeals from a declaratory judgment holding that the sale of "pickle cards" by CONtact, Inc., was a permissible lottery under Neb. Rev. Stat. §§ 28-1101(6) and 28-1115 (Reissue 1979).

CONtact, Inc., is a nonprofit corporation organized under the laws of Nebraska. As a means of fund-raising, CONtact, Inc., sells pickle cards. These cards, purchased for a quarter, have tabs which the purchaser opens. Once opened, the card reveals five configurations of three symbols each. The front of the card specifies winning combinations and the amount which can be claimed as a prize. Thus, for example, if, upon opening the tab, the card reveals one configuration of three oranges, the purchaser, according to the list of winners, can claim $5 as a prize. CONtact, Inc., purchases pickle cards in boxes of 1,632. The cards are dumped into a tub and selected at random by the purchaser. Each box contains 224 winners. Each box's sales are maintained separately. However, when a box is almost sold out, a new box may be added to the tub. Occasionally a box may be dumped if the big winners are drawn early.

On April 6, 1981, the Lancaster County Attorney sent CONtact, Inc., a directive, ordering CONtact, Inc., to discontinue the sale of pickle cards. This directive was based on an Attorney General's opinion which found that such cards were not a permissible gambling device under § 28-1115. CONtact, Inc., then commenced this action to obtain a declaratory judgment determining the validity of the sale of pickle cards. The District Court found that the sale of pickle cards is a permissible lottery under §§ 28-1101(6) and 28-1115. The State has appealed.

The State assigns as error the finding that the sale is lawful. The relevant statutes read as follows: "Lottery shall mean a gambling scheme in which (a) the players pay or agree to pay something of

value for chances, represented and differentiated by numbers or by combinations of numbers or by some other medium, one or more of which chances are to be designated the winning ones, (b) the winning chances are to be determined by a drawing or by some other method based on an element of chance, and (c) the holders of the winning chances are to receive something of value." § 28-1101(6).

"Any nonprofit organization holding a certificate of exemption under the Internal Revenue Code, section 501, or whose major activities, exclusive of conducting lotteries, raffles, or gift enterprises, are conducted for charitable and community betterment purposes, *may conduct lotteries,* raffles, and gift enterprises. The gross proceeds of such activities may be used solely for charitable or community betterment purposes, awarding of prizes to participants, and operating such lottery, raffle, or gift enterprise. Not less than sixty-five per cent of the gross proceeds shall be used for the awarding of prizes and not more than twenty-five per cent of that amount remaining after the awarding of prizes shall be used to pay the expenses of operating such scheme. For the purpose of this section, the expenses of operating a lottery shall include (1) all costs associated with printing or manufacturing any items to be used or distributed to participants such as tickets or other paraphernalia, (2) all office expenses, (3) all promotional expenses, (4) all salaries of persons employed to operate the scheme, (5) any rental or lease expense, and (6) any fee paid to any person associated with the operation of a lottery, raffle, or gift enterprise, except that prizes awarded to participants shall not be included within the twenty-five per cent limitation contained in this section. Each nonprofit organization conducting a lottery shall have its name clearly printed on each lottery ticket used in such lottery. No such ticket shall be sold unless such name is so printed thereon.

Each nonprofit organization conducting a lottery shall keep a record of all locations where its lottery tickets are sold. All tickets must bear a number, which numbers must be in sequence." (Emphasis supplied.) § 28-1115.

The State contends that the sale of pickle cards by nonprofit organizations is illegal because the number of winners is predetermined, the chances for fraudulent manipulation are great, and, thus, the game does not have the requisite element of chance. Further, early payout of winners can reduce the chance of winning in a particular box's sales to zero. The State further contends that the statutes permit only lotteries which have a drawing *after* all of the tickets have been sold and in which the winner is determined by the drawing itself.

The statute defining lottery is a codification of earlier case law. The basic elements required by statute are (1) consideration, (2) prize, and (3) chance. See *State ex rel. Hunter v. Fox Beatrice Theatre Corporation,* 133 Neb. 392, 275 N.W. 605 (1937). The State makes no contention that either of the first two elements is lacking in this scheme. Neither does the State contend that CONtact, Inc., is not qualified to operate a lottery or that the procedural requirements of § 28-1115 are not being followed, i.e., ticket identification and numbering.

The issue for determination is simply one of statutory construction. Generally, statutory language will be given its plain and ordinary meaning and a statute is open to construction only if it is ambiguous. *State v. One 1970 2-Door Sedan Rambler,* 191 Neb. 462, 215 N.W.2d 849 (1974); *O'Neill Production Credit Assn. v. Schnoor,* 208 Neb. 105, 302 N.W.2d 376 (1981).

The statutory language at issue appears to be unambiguous. Section 28-1101(6) requires one or more chances to be designated the winning ones. The statute makes no time reference as to when the

designation is to take place, but merely states that "the winning chances are to be determined by a drawing or by some other method based on an element of chance." The statute requires designation of the winner only by "chance" or by a drawing.

Chance has been defined as "Absence of explainable or controllable causation; accident; fortuity; hazard; result or issue of uncertain and unknown conditions or forces; risk; unexpected, unforeseen, or unintended consequence of an act. The opposite of intention, design, or contrivance." Black's Law Dictionary 210 (5th ed. 1979). A game of chance is one in which the winner is determined by mere luck and not by skill. The predominate nature of the game, i.e., skill or chance, determines its classification. See *Utah State Fair Ass'n et al. v. Green et al.,* 68 Utah 251, 249 P. 1016 (1926). Another definition of chance is that if the game is designed to induce the gambling instinct, it is a game of chance. *O'Brien v. Scott,* 20 N.J. Super. 132, 89 A.2d 280 (1952). See, also, *Boies v. Bartell,* 82 Ariz. 217, 310 P.2d 834 (1957).

In *Boyd v. Piggly Wiggly Southern, Inc.,* 115 Ga. App. 628, 155 S.E.2d 630 (1967), the court discussed whether the predetermination of a winning ticket negates the existence of chance. The court held it did not. "[T]he point which is overlooked is that the record conclusively shows that the recipients of the winning tickets were determined purely by chance. The point is aptly illustrated in defendant's brief, where the following hypothetical question is posed: suppose in a drawing for a prize the names of the presidents of the United States were put on tickets and placed in a hat, the person drawing the name of the first president of the United States to win the prize. Certainly the winner of the prize would be determined by chance even though the fact that George Washington was the first president is more widely known than the winners of the horse races."

*Id.* at 633-34, 155 S.E.2d at 635.

The *Boyd* case was held controlling in *Winn-Dixie Stores, Inc. v. Boatright,* 115 Ga. App. 645, 155 S.E.2d 642 (1967). In that case a supermarket game was held to be a lottery. Customers were given a ticket consisting of two halves, each half marked "You win $    ." When the blank was rubbed with bleach a number would appear. If the customer had a right and a left half which matched, the customer would win the amount designated.

Several cases have considered whether a "punchboard" is a lottery. In a punchboard the numbers to be selected by a purchaser are concealed in holes in a card. A purchaser selects a number by "punching" a slip of paper out of the card. The device is similar to a pickle card in that the winning numbers are predetermined. In *Helen Ardelle, Inc. v. Federal Trade Commission,* 101 F.2d 718 (9th Cir. 1939), a punchboard used for candy distribution was held to be a lottery or gambling device. "They also furnish with each assortment a punchboard and, attached to it, a legend or statement explaining its use. Thus, knowingly and purposely, petitioners cause and procure their candy to be sold and distributed to the public by means of a lottery or gambling device." *Id.* at 719.

In *State v. Hudson,* 128 W. Va. 655, 37 S.E.2d 553 (1946), the West Virginia Supreme Court held that a punchboard was a lottery. "This Court has held that a lottery is commonly understood to mean a scheme for the distribution of prizes by chance. *State v. Matthews,* 117 W. Va. 97, 184 S.E. 665. The distinction between a lottery and other forms of gambling has been considered and recognized in several other jurisdictions. In some of those jurisdictions it is declared that the element of chance must dominate before the scheme or the device can be called or designated a lottery. The decided weight of judicial authority supports that view. . . .

A punch board which, for a consideration, distributes merchandise to the holder of a lucky number has been held to be a lottery. *Helen Ardell[e], Inc. v. Federal Trade Commission,* 101 F.2d 718. The vendor of a punch board consisting of a board with holes in which blank slips and slips calling for prizes are inserted and the right to punch one hole is sold to a purchaser who receives either nothing or a determined prize, is concerned with setting up a lottery within the meaning of a statute of the State of Alabama which makes a lottery a criminal offense. *Brewer v. Woodham,* 15 Ala. App. 678, 74 So. 763. In the case of *Callison v. State,* (Tex. Civ. App.), 146 S.W.2d 468, the Court uses this language: 'Obviously, the punch boards are lotteries; purely games of chance or luck. The numbers are hidden from view until punched from the board by players. No skill is exercised in the operation of the game, and the boards can be used for no purpose other than gaming; they were designed for that purpose only.' It is clear that all of the elements of a lottery are present in the case at bar. Those who participated in the operation of the punch board paid for the right to share in the distribution of a prize, and the result of their venture depended entirely upon chance. No skill was required of any person who punched a number from the board, and the prize consisted of money. The punch board described in the evidence is a lottery, and this Court so holds." *Id.* at 664-66, 37 S.E.2d at 558-59.

In *In re Gray,* 23 Ariz. 461, 204 P. 1029 (1922), the Arizona Supreme Court found the use of candy punchboards to be lotteries. "The following definition of a lottery has received approval: Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery. *Hull v. Ruggles,* 56 N.Y. 424; *Wilkinson v. Gill,* 74 N.Y. 63,

30 Am. Rep. 264; *State v. Mercantile Assn., supra.*
In *United States v. Olney,* 1 Abb. 275, Fed. Cas. No.
15,918, a 'lottery' is defined to be a sort of gaming
contract by which, for a valuable consideration, one
may by favor of the lot obtain something in return,
of a value superior to that which he risks. See, also,
*Fleming v. Bills,* 3 Or. 286-289.

"Perhaps as satisfactory a definition as any is that
given by Cyc., volume 25, page 1633:

" 'A lottery is a species of gaming which may be
defined as a scheme for the distribution of prizes by
chance, among persons who have paid, or agreed to
pay, a valuable consideration for the chance to ob-
tain a prize.'

"For the purposes of this case, the above defini-
tion may be adopted.

. . . .

"Under the definitions quoted, and the examples
to be found in the cases cited herein, we have no
doubt the scheme adopted by the appellant was a lot-
tery. The elements of consideration, chance, and
prize are present. That consideration was paid and
prizes given is not questioned. Concerning the ele-
ment of chance, it is to be noted that the numbers
were concealed under the buttons, and that certain
of these numbers, when exposed by purchasers,
called for redemption in boxes of candy. Discussing
this scheme, it is said in the brief for appellant:
'The board decides who gets the candy as premi-
ums.' And—

" 'The buttons are all identical and have nothing
whatever to do with indicating whether or not the
purchaser shall receive, in addition to his regular
purchase, for which it is conceded he receives full
value for his money, a box of candy.'

"It is very plain that but for such element of
chance and uncertainty the board would not have
been set up or played." *Id.* at 466-68, 204 P. at 1031.

Other cases have held that a drawing is not the

only means by which a lottery can be conducted by "chance." In *Forte v. United States,* 83 F.2d 612 (D.C. Cir. 1936), the legality of a numbers game was at issue. "It is further contended that the numbers game is not a lottery because there must be a physical drawing of the certificate or ticket. One of the essential elements of a lottery is the awarding of a prize by chance, but the exact method adopted for the application of chance to the distribution of prizes is immaterial." *Id.* at 615. See, also, *Shelton v. State,* 198 Md. 405, 84 A.2d 76 (1951).

Section 28-1115 does not alter the statutory definition of "lottery."

We conclude that the sale of pickle cards is a lottery and thus permitted by §§ 28-1101(6) and 28-1115. The drawing of the cards from a tub provides the element of "chance" required by statute. The fact that the winning numbers are predetermined does not eliminate "chance."

The judgment of the District Court is affirmed.

AFFIRMED.

CLINTON, J., participating on briefs.