VIDEO CONSULTANTS OF NEBRASKA, INC., A NEBRASKA CORPORATION, APPELLEE, V. PAUL L. DOUGLAS, ATTORNEY GENERAL, STATE OF NEBRASKA, AND DONALD KNOWLES, COUNTY ATTORNEY, COUNTY OF DOUGLAS, NEBRASKA, APPELLANTS, IGT NEBRASKA, INC., A NEBRASKA CORPORATION, AND CITY OF BELLEVUE, NEBRASKA, A MUNICIPAL CORPORATION, INTERVENORS-APPELLEES.

367 N.W.2d 697

Filed May 10, 1985.   No. 84-092.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, and Donald L. Knowles, Douglas County Attorney, for appellants.

Warren S. Zweiback and Richard A. DeWitt of Zweiback, Kasher, Flaherty & DeWitt, P.C., for appellee.

William R. Johnson of Kennedy, Holland, DeLacy & Svoboda, for intervenor-appellee IGT Nebraska.

John E. Rice, for intervenor-appellee city of Bellevue.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

Raised in this case is the question whether an electronic gaming machine, such as a video computer, is a form of lottery permitted under statutes enacted by the Nebraska Legislature in

1983 relative to gambling. At the outset we note that the Legislature, in 1984, amended the statute defining "lottery" and specified devices which do not qualify as a "lottery." The 1984 amendment states: "Lottery shall not include any gambling scheme which uses any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding monetary prizes, free games redeemable for monetary prizes, or tickets or stubs redeemable for monetary prizes." Neb. Rev. Stat. § 28-1101(6) (Cum. Supp. 1984).

Nevertheless, because activities have likely occurred involving the 1983 statutes, and liabilities, civil or criminal, may be unresolved due to the uncertainty concerning the legality of activities under the questioned statutes, we are compelled to dispose of the question raised.

Video Consultants of Nebraska, Inc., and IGT Nebraska, Inc., supply video lottery equipment, consultation, and services to nonprofit organizations and political subdivisions authorized to operate lotteries. See Neb. Rev. Stat. §§ 28-1115 to 28-1116.01 (Supp. 1983). The city of Bellevue (Bellevue) is a municipal corporation whose electors have authorized that city to operate a lottery. See § 28-1116. Defendants in this case are the Attorney General of the State of Nebraska and the Douglas County attorney (hereinafter called the "State"), who are charged with enforcing the Nebraska laws prohibiting gambling.

Video Consultants and IGT entered contracts with Bellevue to provide video lottery equipment, consultation, and services in conducting a lottery. In a November 7, 1983, letter to the mayor of Bellevue, the Attorney General stated that the video lottery conducted by Bellevue violated Nebraska's gambling laws, and directed Bellevue to cease operation of its video lottery. According to the Attorney General's letter, failure to remove the video lottery would result in proceedings commenced by the State for an injunction prohibiting Bellevue's further operation of a video lottery.

Video Consultants filed a petition in the district court for Douglas County, seeking a permanent injunction to prevent the State from interfering with operation of video lotteries in

Bellevue and asking the district court to declare video lotteries permissible under Nebraska law. IGT and Bellevue filed petitions to intervene and requested relief substantially similar to that requested by Video Consultants.

For the purpose of trial the State stipulated with Video Consultants and IGT regarding a video lottery.

Video Consultants and the State stipulated:

> The video lottery equipment . . . consists of computer-based video machines which are activated by a participant inserting one or more coins. The machine is equipped with an eighty-number pad from which the participant may select from one to ten numbers. Upon selection of his numbers, the participant activates the machine which selects, purely at random, twenty (20) numbers from the total base of eighty (80) numbers. The participant's winnings, if any, are determined by matching the numbers selected by the participant with the random numbers selected by the machine.
>
> . . . Each machine is equipped with a computer-driven ticket printer which has the capability of printing whatever information is desired. The machine is capable of printing a ticket at the start of each play which reflects the numbers selected by the participant, and another ticket at the conclusion of each play which reflects the winning numbers selected by the machine at random together with the amount which the participant has won, if any. However, for convenience and in order to eliminate the use of excessive paper, the machines, as presently provided by Plaintiff to Sponsors, are programmed to allow a participant to accumulate credits on the machine and, upon activation by the participant at the termination of the participant's use of the machine, to print a single ticket which states the cumulative amount which the participant has won. Each ticket issued in the lottery conducted by Sponsors has the name of the Sponsor clearly printed on each ticket, each ticket bears a number, which numbers are in sequence and each Sponsor keeps a record of all locations where its tickets are issued. Tickets are redeemable for the amount of the prizes awarded by the

Sponsor, Plaintiff or authorized agents. As presently provided by Plaintiff to Sponsors, tickets issued by the machines reflect the amount of winnings and are required to be presented in order for the participant to receive a prize, but the tickets do not have a functional role in determining whether a participant wins or the amount of the winnings.

IGT and the State stipulated:

The video lottery equipment . . . consists of computer-based video machines described as follows:

(a) Each location consists of one or more lottery game terminals connected to an agent terminal. . . . Individuals play the game terminals and can accumulate their winnings on the video meter. If the player leaves without having accumulated any winnings, no losing ticket is printed. However, if the play [sic] accumulates winnings and desires to "cash out," he presses the button on his game terminal labeled "collect winnings." This causes his lottery game terminal to inform the agent terminal which, in turn, causes a winning ticket to be printed by the game terminal. On this ticket is printed a random validation code assigned by the agent terminal, and a copy of the ticket is simultaneously printed on the agent terminal. The player then takes his ticket to the agent for validation and payment.

(b) Daily a central site system dials up each agent terminal to obtain a summary data for that day's play at that location. This data is stored for report distribution and subsequent processing.

(c) The IGT video lottery game uses color graphics, animation, on-screen instructions and sound effects to instruct and inform players. The audio-visual components instruct and inform players. The audio-visual components add greatly to the realism, player involvement and enjoyment of video lottery games. . . . Players will interact with the game through use of a light pen and push buttons.

(d) The game is activated by the insertion of a coin (presently .25¢) but the amount may be changed by owner option.

(e) The game's random program does not involve any player skill, and will, on average, return approximately 85 percent of the dollar amount played in the form of various size prizes. . . .

On January 16, 1984, the district court held the challenged video lotteries of Video Consultants, IGT, and Bellevue were "lawful and legal conduct of a lottery under the provisions of Neb. Rev. Stat. Sec. 28-1115, 28-1116 and 28-1116.01 (Supp. 1983)."

A series of interrelated gambling statutes applicable to the issue in this case are set forth in pertinent part:

(5) Gambling device shall mean any device, machine, paraphernalia, writing, paper, instrument, article, or equipment that is used or usable for engaging in gambling, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine. Bingo supplies and equipment as defined in section 9-129, pickle cards as defined in section 9-140.01, pickle card units as defined in section 9-140.05, and tickets, cards, and other items used in the playing phases of schemes defined in sections 28-1113 to 28-1116.01, are not gambling devices within this definition;

(6) Lottery shall mean a gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other medium, one or more of which chances are to be designated the winning ones, (b) the winning chances are to be determined by a drawing or by some other method based on an element of chance, and (c) the holders of the winning chances are to receive something of value.

§ 28-1101 (Supp. 1983).

Any county, city, or village may establish and conduct lotteries when the proceeds of such lotteries are used for community betterment purposes and the awarding of prizes to participants.

§ 28-1116.

Each county, city, or village conducting a lottery shall have its name clearly printed on each lottery ticket used in such

lottery. No such ticket shall be sold unless such name is so printed thereon. Each county, city, or village conducting a lottery shall keep a record of all locations where its lottery tickets are sold. All tickets shall bear a number, which numbers shall be in sequence.

§ 28-1116.01.

In *CONtact, Inc. v. State,* 212 Neb. 584, 324 N.W.2d 804 (1982), this court held that a lottery is a game of chance in which the winner is determined by mere luck, not by skill, and acknowledged the three elements prescribed by statute for a lottery—consideration, a prize, and chance. See § 28-1101(6).

On appeal the State concedes that the activity produced by the video gaming device is a lottery, but presents two arguments to advance the contention that the video and computerized activity is illegal. First, the State contends a video or electronic machine is a gambling device, because the machine does not qualify for the statutory exemption describing nongambling devices in § 28-1101(5). Second, sale of a ticket used in the "playing phase" of a lottery is indispensable to a statutorily permissible lottery, but the ticket involved in the present case is actually a receipt for or evidence of winning a lottery. Therefore, in the absence of a purchased ticket as a basis for the element of "chance" essential to a lottery, there is no lottery authorized by statute.

The real question before us is one of statutory construction.

In *CONtact, Inc. v. State, supra,* we held that sale of pickle cards by a nonprofit organization was a permissible lottery and stated: "Generally, statutory language will be given its plain and ordinary meaning and a statute is open to construction only if it is ambiguous." *Id.* at 587, 324 N.W.2d at 806.

The State contends that the exemptive phrase "other items," as used in § 28-1101(5), refers to objects having the essential characteristics of tickets or cards used for a lottery, or which are associated with tickets and cards as paraphernalia used to conduct or participate in a lottery, for example, a tumbler or box where tickets are mixed before selection through chance.

Obviously, video and electronic machines are being used in production of a lottery. In its regulation of gambling, had the Legislature intended to exclude a machine, especially an

electronic or video gaming device, as an object proscribed in a permissible lottery, such exclusion was not an impossible statutory feat. Yet, the Legislature employed unrestrictive, generic terms in describing the means to conduct a permissible lottery so that any article or any method was available in the "playing phase" of a legal lottery. This court cannot now insert into the statute an exclusion or restriction which the Legislature might have included when enacting § 28-1101(5) and (6) in 1983. We cannot assume that the Legislature intended to exclude electronic gaming devices from "other items used in the playing phases" of a lottery authorized by statute. As expressed in *State ex rel. Douglas v. Herrington*, 206 Neb. 516, 523, 294 N.W.2d 330, 334 (1980):

> The lack of clarity cannot be corrected by administrative or judicial construction. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative language; neither is it within the province of a court to read anything plain, direct, and unambiguous out of a statute.

See, also, *Wendt v. Cavalier Ins. Corp.*, 197 Neb. 622, 250 N.W.2d 243 (1977). We conclude that the electronic gaming devices involved in this case are not "gambling devices" as such phrase and description are used in § 28-1101(5).

Regarding the State's contention that a ticket or card must be included as an indispensable part of a lottery, in *CONtact, Inc. v. State, supra*, we cited and quoted with approval the language of *Forte v. United States*, 83 F.2d 612, 615 (D.C. Cir. 1936): "One of the essential elements of a lottery is the awarding of a prize by chance, but the exact method adopted for the application of chance to the distribution of prizes is immaterial." This court cannot rewrite § 28-1101(5) and (6)(b), as well as § 28-1116, to the effect that "winning chances are to be determined by drawing a purchased ticket as the only basis for the element of chance." Purchase of a ticket is not the only means of participating in a lottery otherwise permissible under Nebraska's gambling statutes.

AFFIRMED.