REQUESTED BY: Senator Stan Schellpeper Nebraska State Legislature
You have requested our opinion concerning the constitutionality under Neb. Const. art. III, § 24, of portions of two bills currently before the Legislature (LB 522 and LB 534) proposing to expand the manner in which certain gambling activities may be conducted in Nebraska. LB 522 proposes, in part, to authorize a form of "electronic" pickle card device which would incorporate a video display feature. LB 522, §§ 1 to 7. The bill also would amend the provisions of the Nebraska County and City Lottery Act to eliminate the "paper ticket" requirement currently contained in the Act, as well as the prohibitions against "player activation" and the use of "mechanical", "computer", "electronic" or "video" gaming devices, to permit "electronic" keno. LB 522, §§ 8-13. Section 14 of LB 522 would authorize organizations licensed to conduct live thoroughbred horseracing to apply for a license to conduct a lottery under the County and City Lottery Act. LB 534, which is virtually the same as LB 915, introduced during the last legislative session, would amend the definition of "lottery" under the County and City Lottery Act to include, in addition to the ticket drawing or keno forms presently authorized, a third method of determining winners, broadly stated as being "[b]y some other method based on an element of chance; . . . ." LB 534, § 1. The bill also proposes to eliminate the prohibition in Neb. Rev. Stat. § 9-607(2)(a) (Cum. Supp. 1996) against lotteries including "any gambling scheme which uses any mechanical gaming device, computer gaming device, electronic device, or video gaming device . . .," and to remove such devices from the definition of "gambling device" under Neb. Rev. Stat. § 28-1101(5) (1995).
You request our advice concerning whether these provisions of LBs 522 and 534 are within the Legislature's power under Neb. Const. art. III, § 24, to authorize "lotteries" for charitable or community betterment purposes, or whether the proposed legislation impermissibly proposes to authorize "games of chance" prohibited under the Nebraska Constitution.[1] For the reasons outlined below, we reiterate our prior conclusion that, in order to give effect to the separate recognition of the prohibition against "games of chance" under the Nebraska Constitution, and the exception allowing "lotteries" for charitable or community betterment purposes, the term "lotteries" must be interpreted in its narrow sense, meaning schemes in which tickets or tokens are distributed or sold and prize winners are either secretly predetermined or ultimately selected by some form of random drawing.[2] Applying this interpretation to LBs 522 and 534, it is our opinion that, for the reasons stated below, the amendments proposed are likely unconstitutional.[3]
[1] Article III, § 24 provides, in pertinent part, as follows:
 (1) Except as provided in this section, the Legislature shall not authorize any game of chance or any lottery or gift enterprise when the consideration for a chance to participate involves the payment of money or the purchase of property, services, or a chance or admission ticket or requires an expenditure of substantial effort or time.
 (2) The Legislature may authorize and regulate a state lottery pursuant to subsection (3) of this section and other lotteries, raffles, and gift enterprises which are intended solely as business promotions or the proceeds of which are to be used solely for charitable or community betterment purposes without profit to the promoter of such lotteries, raffles, or gift enterprises.
[2] Op. Att'y Gen. No. 95085 (November 17, 1995), at 23.
[3] As noted more specifically below, we feel the "electronic keno" gambling proposed under LB 522 is unconstitutional. We believe that it is a closer question as to whether the "electronic" pickle card devices proposed under LB 522 are unconstitutional.
I. Previous Attorney General Opinions.
In your request, you reference two recent Attorney General opinions addressing the constitutionality of legislation which proposed to authorize "slot machines" or other "electronic gaming devices" as "lotteries" for charitable or community betterment purposes. Op. Att'y Gen. No. 95085 (November 17, 1995); Op. Att'y Gen. No. 96007 (January 23, 1996). In Opinion No. 95085, based on our understanding that the terms "slot machine" or "video or electronic gaming device" referred to gaming devices in the nature of "traditional" slot machines, or video devices based on a slot machine theme, and video or electronic devices based on games such as poker, blackjack, or dice, (id. at 2n.1), we concluded:
 [T]he Legislature may not enact legislation to permit the use of "slot machines" or other "electronic gaming devices" under the constitutional grant permitting the Legislature to authorize "lotteries, raffles, and gift enterprises . . . the proceeds of which are used for charitable or community betterment purposes." Under Article III, § 24, the Legislature is precluded from authorizing "any game of chance or any lottery or any gift enterprise" except as provided in the Constitution. In our opinion, "slot machines" or other forms of "electronic gaming devices" fall within the category of "games of chance" prohibited by the Constitution, and not "lotteries" which the Legislature may sanction under its authority to permit "lotteries" for charitable or community betterment purposes. Accordingly, "slot machines" or other "electronic gaming devices" may not be authorized by the Legislature for these purposes absent an amendment to the Nebraska Constitution.
Id. at 24-25.
Subsequently, in Opinion No. 96007, in which we addressed the constitutionality of legislation (LB 915) identical to LB 534 proposing to amend the County and City Lottery Act to allow "lotteries" to be "based on some other element of chance", we stated:
 [T]he issue is not whether the Constitution prohibits the use of video or electronic gaming devices in the conduct of a "lottery;" rather, as we have stated, the issue is whether the gambling activity constitutes a permissible "lottery," as opposed to a prohibited "game of chance.". . . Thus, the Legislature may not constitutionally adopt a definition of "lottery" which purports to authorize "lotteries" for charitable or community betterment purposes which, in fact, constitute prohibited "games of chance."
Id. at 3-4.[4]
II. Application of Prior Opinions to LBs 522 and 534.
As your opinion request relates to two distinct legislative proposals for expanded gambling, we will address each separately for purposes of our analysis.
A. LB 522
LB 522, as noted, contains language proposing to amend provisions of both the Nebraska Pickle Card Lottery Act and the Nebraska County and City Lottery Act. You have presented three separate questions pertaining to the constitutionality of LB 522.
1. "Electronic" Pickle Cards.
Sections 1 through 7 of LB 522 propose to amend the Nebraska Pickle Card Lottery Act, Neb. Rev. Stat. §§ 9-301 to 9-356
(1991 and Cum. Supp. 1996) to authorize a form of "electronic" pickle card device. Section 2 would amend the definition of "pickle card" in § 9-315 to include an "electronic pickle card", which would be "electronically open[ed] . . . by moving a finger or other physical object over the face of the displayed pickle card, . . . ." You state that
 [t]his provision is intended to authorize use of technology which electronically duplicates a pickle card lottery as currently authorized by Nebraska law, and is intended to contain all of the characteristics of the paper game including: finite pool of predetermined winning and losing tickets, random selection of winners and losers, number and amount of preselected prizes, having players play against one another as opposed to playing against a machine, and visual depiction of the same types of symbols as well as electronic duplication of the manner of selecting winners. The language of this section continues to require that the person play the game by opening the card to reveal certain numbers, letters, symbols or configurations in order to determine winners or losers and does not authorize slot machines, video or electronic devices based on a slot machine theme, or video, computer or electronic gaming devices based on games such as poker, blackjack, or dice. This provision is only intended to change the means of accessing the game, similar to the concept of using a fax machine to send a letter rather than the post office; the content is not changed, merely the means of transmitting it.
Based on this description, your question is whether the Legislature may authorize use of this electronic pickle card device as a lawful form of "lottery", or whether such would be a "game of chance" prohibited by art. III, § 24, of the Nebraska Constitution?
The Nebraska Supreme Court upheld the validity of the sale of "pickle cards" as a permissible form of "lottery" under Nebraska statutes in CONtact, Inc. v. State, 212 Neb. 584,324 N.W.2d 804 (1982) ["CONtact, Inc."]. CONtact, Inc. brought a declaratory judgment action seeking a determination that the sale of "pickle cards" for fundraising by a nonprofit corporation was a permissible form of "lottery" under Neb. Rev. Stat. §§28-1101(6) and 28-1115 (1979). "Lottery" was defined as "a gambling scheme in which (a) the players pay or agree to pay something of value for chances, represented and differentiated by numbers or by combinations of numbers or by some other medium, one or more of which chances are to be designated the winning ones, (b) the winning chances are to be determined by a drawing or by some other method based on an element of chance, and (c) the holders of the winning chances are to receive something of value." Id.
at 585-86, 324 N.W.2d at 805. The State contended that the sale of pickle cards by nonprofit organizations did not fall within this definition of "lottery" because, as the number of winners was predetermined, the potential for fraudulent manipulation was great, and the game therefore did not possess the requisite element of chance. The State also argued that the statutes permitted only lotteries having a drawing after all tickets had been sold, in which the winner was determined by the drawing itself. Id. at 587, 324 N.W.2d at 805-06.
The Court in CONtact, Inc. noted that the statute defining "lottery" was "a codification of earlier case law", and contained the "basic elements" of "(1) consideration, (2) prize, and (3) chance." Id. at 587, 324 N.W.2d at 806. It saw the issue as "simply one of statutory construction." Id. Finding that the statutory language was "unambiguous", the Court rejected the contention that only lotteries consisting of drawings after the sale of all tickets were permissible, stating:
 Section 28-1101(6) requires one or more chances to be designated the winning ones. The statute makes no time reference as to when the designation is to take place, but merely states that "the winning chances are to be determined by a drawing or by some other method based on an element of chance." The statute requires designation of the winner only by "chance" or by a drawing.
Id. at 587-88, 324 N.W.2d at 806.
The Court further found that the pickle card scheme satisfied the "chance" requirement, stating: "The drawing of the cards from a tub provides the element of `chance' required by statute. The fact that the winning numbers are predetermined does not eliminate `chance.'" Id. at 592, 324 N.W.2d at 808. It therefore held "that the sale of pickle cards is a lottery and thus permitted by §§ 28-1101(6) and 28-1115." Id.
The decision in CONtact, Inc. involved consideration only of whether the sale of "pickle cards" constituted a permissible "lottery" under a legislative definition of the term. Also, while the Court in CONtact, Inc. noted that the statute defining "lottery" in relation to the three elements of prize, chance, and consideration was "a codification of earlier case law" (212 Neb. at 587, 324 N.W.2d at 806), it must be remembered that such case law predated the 1968 constitutional amendment to art. III, § 24, allowing the Legislature to authorize "lotteries, raffles, and gift enterprises" for charitable or community betterment purposes. These decisions were rendered when Nebraska's Constitution and statutes generally prohibited any "games of chance, lottery, or gift enterprise", thus obviating the need for the Court to make any distinction between "games of chance" and "lotteries".
As reflected in our earlier opinion, the term "games of chance" is broad in nature, and refers to any game in which chance is the predominant element, as opposed to skill, "when the consideration for a chance to participate involves the payment of money or the purchase of property [or] services." State ex rel.Spire v. Strawberries, Inc., 239 Neb. 1, 7, 473 N.W.2d 428, 434
(1991). A "game of chance" includes the three elements of chance, consideration, and prize. Id. The broad definition of "lottery", as reflected in CONtact, Inc. and other cases (e.g.Video Consultants of Nebraska, Inc. v. Douglas, 219 Neb. 868,367 N.W.2d 697 (1985), State ex rel. Line v. Grant, 162 Neb. 210,75 N.W.2d 611 (1956), encompasses the same three elements: (1) chance; (2) prize; and (3) consideration.
We believe that a proper construction of art. III, § 24, requires that the term "lotteries", under the exception authorizing the Legislature to permit "lotteries, raffles, and gift enterprises" for charitable or community betterment purposes, must be construed in a narrower manner than the broad definition of any scheme involving the elements of prize, chance, and consideration. As we stated in our prior opinion:
 If the term "lotteries" under the exception in art. III, § 24, authorizing the Legislature to permit "lotteries, raffles, and gift enterprises" for community betterment purposes, is construed to authorize any scheme involving the elements of prize, chance, and consideration, the prohibition against "games of chance" would be rendered meaningless. . . . In order to give effect to the separate recognition of "games of chance" and "lotteries" under art. III, § 24, the term "games of chance" must be interpreted as a broad prohibition against gambling activities, and the term "lotteries", under the exception allowing such for community betterment purposes, must be interpreted in a narrower sense, as involving schemes in which tickets or tokens are distributed or sold and prize winners are either secretly predetermined or ultimately selected by some form of random drawing.
Op. Att'y Gen. No. 95085 at 22-23 (citations omitted).
The present statutory scheme authorizing the conduct of "pickle card lotteries" under Neb. Rev. Stat. §§ 9-301 to9-356 (1991 and Cum. Supp. 1996) requires the use of a physical card, board or ticket to be opened by the player to determine if it is a winner. Neb. Rev. Stat. §§ 9-315 and 9-346(2) (Cum. Supp. 1996). The cards are distributed in units consisting of a predetermined number of winning and losing cards. Neb. Rev. Stat. § 9-317 (1991). Thus, the conduct of pickle card lotteries in this manner clearly comports with the narrow definition of "lottery" outlined in our earlier opinion, as it involves a scheme whereby tickets are sold from a pool consisting of a finite number of predetermined winning and losing tickets.
Under LB 522, the "ticket" limitation presently incorporated in the Pickle Card Lottery Act would be altered to authorize use of devices which do not dispense a card or ticket to be opened by the player; rather, the player will apparently move a finger or physical object over an electronic machine with a video display which imitates the form of a pickle card to visually reveal its contents. As we understand the proposed operation of the electronic pickle card device, no physical card or ticket would be dispensed to the player.
The absence of a physical card or ticket in connection with the proposed device raises a question as to whether operation of such a device comports with the definition of a permissible "lottery" under art. III, § 24, as defined in our prior opinion. We recognize and appreciate that the manner in which the game would be conducted would be similar in all respects to the manner in which pickle card lotteries are presently authorized, with the exception of the substitution of a video or electronic display and "opening" of the "card", as opposed to the dispensing of a physical card to be opened by the player. It could be argued that the use of such technology does not alter the fundamental nature of the manner of play, and, therefore, the use of such a device would not be inconsistent with the Legislature's power to authorize "lotteries" under art. III, § 24. Because of the absence of a physical card or ticket, however, it is questionable whether the "electronic" pickle card play proposed under LB 522 can be considered a permissible form of "lottery" under art. III, § 24.
We note, however, that another bill pending before the Legislature (LB 723), also proposes to amend the Pickle Card Lottery Act to allow video pickle card display devices. Unlike LB 522, however, LB 723 continues to require that the player receive a physical card or ticket, to be opened by the player. In this situation, the video display of the contents of the ticket could be viewed as a legitimate form of technological aid or enhancement to play, with the physical card or ticket remaining as an element of the lottery. In our view, use of video enhancement in the play of the game in this manner, while retaining the physical card or ticket element, would be consistent with the type of "lottery" which the Legislature may authorize under art. III, § 24.
2. "Electronic" Keno Games.
Sections 8 to 13 of LB 522 propose to amend various provisions of the County and City Lottery Act to eliminate the "paper ticket" requirement currently contained in the Act, as well as the prohibitions against "player activation" and the use of "mechanical", "computer", "electronic" or "video" gaming devices, to permit "electronic" keno. Specifically, section 9 would amend Neb. Rev. Stat. § 9-607 (Cum. Supp. 1996) to: (1) Eliminate the requirement that winning opportunities be represented by tickets and provide that such are to be "determined on the basis of chance and may be represented by paper or electronic tickets"; (2) Eliminate the prohibition against player-activation of a computer or electronic selection device and the requirement that no selection of winners for a game can occur within five minutes of the completion of the prior selection of winners; (3) Eliminate the prohibition against the use of "any mechanical gaming device, computer gaming device, electronic gaming device, or video gaming device which has the capability of awarding something of value, . . . ."; and (4) Eliminate the requirement that a "paper ticket" be used to select numbers.
Your question is whether, if the County and City Lottery Act is amended "to permit the use of electronic means to replace the paper ticket which the player currently uses to select his or her numbers, to allow the player to activate the number selection device, to remove the time limits on number selection, to remove the prohibition on use of electronic devices, and all other provisions concerning the operation of the lottery continue to follow current practice . . .", would this constitute a permissible "lottery", or a "game of chance" prohibited by art. III, § 24?
In your request, you refer specifically to the Nebraska Supreme Court's decision in Video Consultants of Nebraska, Inc.v. Douglas, 219 Neb. 868, 367 N.W.2d 697 (1985) ["VideoConsultants"], in which the Court found that video lottery machines, operated in much the same manner as those proposed under §§ 8 to 13 of LB 522, did not contravene a Nebraska statutes defining the terms "lottery" and "gambling device." As was the case in our prior opinions, we will again analyze this decision and explain why we do not believe that it supports the conclusion that the conduct of "electronic" keno games such as proposed under LB 522 may be authorized by the Legislature as a form of "lottery"; rather, we believe that such fall within the category of a prohibited "game of chance".
Video Consultants involved the "question whether an electronic gaming machine, such as a video computer, is a form of lottery permitted under statutes enacted by the Nebraska Legislature in 1983 relative to gambling." Id. at 868-69, 367 N.W.2d at 698.[5] Video Consultants, and IGT Nebraska, Inc., each provided video lottery equipment to the City of Bellevue. The video lottery equipment was stipulated to consist of
 computer-based video machines which [were] activated by a participant inserting one or more coins. The machine [was] equipped with an eighty-number pad from which the participant [could] select from one to ten numbers. Upon selection of his numbers, the participant activate[d] the machine which select[ed], purely at random, twenty (20) numbers from the total base of eighty (80) numbers. The participant's winnings, if any, [were] determined by matching the numbers selected by the participant with the random numbers selected by the machine.
Id. at 870, 367 N.W.2d at 699.
At issue in Video Consultants was whether the "video lottery" fell within the definition of "lottery" in Neb. Rev. Stat. § 28-1101(6) (Supp. 1983), and whether the "video lottery equipment" was a "gambling device" prohibited under Neb. Rev. Stat. § 28-1101(5) (Supp. 1983). The State "conced[ed] that the activity produced by the video gaming device [was] a lottery, . . . ." 219 Neb. at 873, 367 N.W.2d at 700. It argued that the video lottery was an illegal gambling device under the statute, however, because the machines did not fall within the statutory exemption for nongambling devices The State also asserted that the sale of a ticket was a necessary part of the "playing phase" of a lottery under the statute, and that the ticket given by the machines was actually a receipt or evidence of winning, and not a ticket. Id.
As to the contention that the machines were illegal "gambling devices" because they did not fall within the statutory exemption for nongambling devices, the Court stated:
 Obviously, video and electronic machines are being used in production of a lottery. In its regulation of gambling, had the Legislature intended to exclude a machine, especially an electronic or video gaming device, as an object proscribed in a permissible lottery, such exclusion was not an impossible statutory feat. Yet, the Legislature employed unrestrictive, generic terms in describing the means to conduct a permissible lottery so that any article or any method was available in the `playing phase' of a legal lottery. This court cannot now insert into the statute an exclusion or restriction which the Legislature might have included when enacting § 28-1101(5) and (6) in 1983. We cannot assume that the Legislature intended to exclude electronic gaming devices from "other items used in the playing phases" of a lottery authorized by statute. . . .
* * *
 We conclude that the electronic gaming devices involved in this case are not "gambling devices" as such phrase and description are used in § 28-1101(5).
Id. at 873-74, 367 N.W.2d at 701.
As to the State's contention that a ticket was an essential part of a lottery as defined in § 28-1101(6), the Court determined that it could not "rewrite" the statutes to require that purchase of a ticket be the only method of satisfying the chance element, finding that "[p]urchase of a ticket is not the only means of participating in a lottery otherwise permissible under Nebraska's gambling statutes." Id. at 874,367 N.W.2d at 701.
As we pointed out in Opinion No. 95085, Video Consultants
involved only issues of whether the video gaming activities at issue constituted a "lottery" or involved use of unlawful "gaming devices" as those terms were defined by statute; no issue was raised as to whether the video gaming activity was a permissible form of "lottery" under the Constitution, as opposed to a prohibited "game of chance." Indeed, in a case discussed at length in Opinion No. 95085, the Supreme Court of South Dakota held that "video lottery" was not a permissible lottery under a South Dakota constitutional provision authorizing a "state lottery", but, rather, was a "game of chance" prohibited under the Constitution. Poppen v. Walker, 520 N.W.2d 238 (1994). The South Dakota court specifically noted that, prior to South Dakota's authorization of "video lottery", a legislative committee concluded a "video lottery" could be implemented under the constitutional grant to create a "state lottery", relying onVideo Consultants. The South Dakota Supreme Court recognized that "[t]he court in Video Consultants was not construing the Nebraska constitutional provision, but was determining the applicability of a series of statutes enacted under the general police power, one of which broadly defined the term "lottery", and "[t]hat the state on appeal conceded that the video device was a lottery. . . ." 520 N.W.2d at 246. We believe the South Dakota court properly concluded that Video Consultants "does not in any way stand for the proposition that video lottery is permissible under the Nebraska Constitution." Id.
The operative question, then, is whether the "electronic" keno game proposed under LB 522 is a permissible form of lottery, or, rather, is a prohibited "game of chance." We reiterate our view that a proper construction of art. III, § 24, requires that the term "lottery", under the exception authorizing the Legislature to permit "lotteries, raffles, and gift enterprises" for charitable or community betterment purposes, must be construed in a narrower manner than the broad definition of any scheme involving the elements of prize, chance, and consideration. As we stated previously:
 If the term "lotteries" under the exception in art. III, § 24, authorizing the Legislature to permit "lotteries, raffles, and gift enterprises" for community betterment purposes, is construed to authorize any scheme involving the elements of prize, chance, and consideration, the prohibition against "games of chance" would be rendered meaningless. . . . In order to give effect to the separate recognition of "games of chance" and "lotteries" under art. III, § 24, the term "games of chance" must be interpreted as a broad prohibition against gambling activities, and the term "lotteries", under the exception allowing such for community betterment purposes, must be interpreted in a narrower sense, as involving schemes in which tickets or tokens are distributed or sold and prize winners are either secretly predetermined or ultimately selected by some form of random drawing.
Op. Att'y Gen. No. 95085 at 22-23 (citations omitted).
Applying this definition, it is our opinion that the "electronic" keno proposed under LB 522 does not constitute a form of "lottery" which the Legislature may authorize under art. III, § 24. The bill proposes to eliminate the current "paper ticket" requirement, which, of course, is one part of the definition noted above. Of greater significance, however, is the elimination of the "player-activation" restriction. You state that these "provisions are not intended to change the essential nature of the lotteries authorized . . .", and that "[c]urrent law requires that a keno game be conducted by having the player select up to 20 numbers from a total of 80 numbers and that the winning numbers be randomly selected by `a computer, other electronic selection device, or electrically operated blower machine,'. . . ." We cannot accept the premise that elimination of the "player-activation" prohibition does not "change the essential nature" of the activity. While it is true that a computer or electronic device may be used to select winning numbers under current law, we believe it is significant that these devices are not activated by the players, but, rather, are used by the keno operator. The concept of individual players activating gambling devices utilizing random-generation of numbers to determine winners at each device is, in our view, inconsistent with what we believe is the narrow manner in which the people, through their Constitution, intended to grant the Legislature power to permit "lotteries" for community betterment purposes. We therefore conclude that the Legislature may not, consistent with art. III, § 24, enact legislation permitting the use of "electronic" keno devices in the manner proposed under §§ 8 to 13 of LB 522.
 3. Authorization of Horseracing Licensees to Conduct Lotteries.
Your final question regarding LB 522 concerns § 14, which would permit certain organizations licensed to conduct live thoroughbred horseracing in Nebraska to be licensed "to conduct a lottery pursuant to the Nebraska County and City Lottery Act." You note that art. III, § 24, requires that the proceeds from such lotteries must "be used solely for . . . community betterment purposes, . . ." and that the Nebraska Supreme Court, in City ofRalston v. Balka, 247 Neb. 773, 779, 530 N.W.2d 594, 600 (1995), held that legislation requiring that a percentage of keno lottery proceeds be credited for use as purse supplements for live thoroughbred racing in Nebraska violated art. III, § 24, as such use did "not qualify for the `community betterment' exception to article III, § 24." You therefore ask whether organizations licensed to conduct live thoroughbred horseracing "may qualify to conduct" a lottery under the County and City Lottery Act, or whether such entities are "rendered ineligible for such a license" under art. III, § 24.
Initially, we note that there may be a question as to whether the Legislature can "single out" these entities to allow them to obtain such a license, without contravening the prohibition in art. III, § 18, against "special legislation". A legislative act constitutes "special legislation" if it creates an arbitrary and unreasonable method of classification. Haman v. Marsh,237 Neb. 699, 467 N.W.2d 836 (1991). To determine if a legislative classification is unreasonable, it is necessary to determine if the classification is "`"based upon some reason of public policy, some substantial difference of situation or circumstance, that would naturally suggest the justice or expediency of diverse legislation with respect to the objects to be classified. . . ."'" Haman v. Marsh, 237 Neb. at 711,467 N.W.2d at 846 (quoting State ex rel. Douglas v. Marsh, 207 Neb. 598,300 N.W.2d 181 (1980)). The legislation contains no statement articulating the Legislature's purpose for creating this classification.
Apart from consideration of this issue, we believe that your question, whether such organizations may be licensed to conduct a lottery under the County and City Lottery Act, does not reach the fundamental issue presented by this proposed amendment. The crucial question raised by this portion of LB 522 is not whether certain thoroughbred horseracing licensees may also be licensed to conduct a lottery under the Nebraska County and City Lottery Act. Rather, it is whether, if they are so licensed, in what manner may they constitutionally utilize the proceeds generated from the conduct of lottery activities?
In this context, the decision in City of Ralston v. Balka
becomes relevant. The Court held that the use of keno lottery proceeds to supplement purses for live thoroughbred horseracing in Nebraska did not serve a "community betterment purpose" as required by art. III, § 24. Specifically, the Court stated:
 [S]upplementing the purses for live thoroughbred racing in Nebraska clearly does not confer any direct and peculiar benefit to the entire community. To the contrary, only the owners of Nebraska-bred horses stand to benefit from implementation of L.B. 795, § 6, and any argument that such a lottery regulation will eventually trickle down to the general populace is at best tenuous. Such a `betterment' clearly is not shared by the entire community. As a result, L.B. 795, § 6, does not qualify for the `community betterment' exception to article III, § 24.
247 Neb. at 779, 530 N.W.2d at 600.
Thus, in response to this question, while it is not clear that the classification created is proper, we feel the real issue is not whether organizations licensed to conduct live thoroughbred horseracing in Nebraska may be granted eligibility to obtain a license to conduct a lottery. Even if such entities could do so, they would still be limited in the manner in which any lottery proceeds could be used, as mandated by art. III, § 24. As City of Ralston instructs, our Supreme Court does not view the use of such proceeds to supplement purses for live thoroughbred horseracing as constituting a "community betterment" purpose under art. III, § 24. While the bill does not address this issue, we believe it is incumbent on us to note this aspect of the Court's decision in City of Ralston.
B. LB 534
Your final question concerns the constitutionality of LB 534. The bill, which is virtually identical to LB 915, introduced in the last session of the Legislature, would amend Neb. Rev. Stat. § 9-607 (Cum. Supp. 1996) to provide that winning opportunities in games conducted under the County and City Lottery Act may be represented by "chances", as well as tickets, or "by some other method based on an element of chance". It would also eliminate the prohibition against the use of mechanical, computer, electronic, or video gaming devices, and would remove such devices from the criminal definition of "gambling device". Your question is whether the Legislature may, consistent with art. III, § 24, enact this legislation.
As noted above, the provisions of LB 534 are, in substance, identical to those proposed last session under LB 915. At your request, we issued a formal opinion on the constitutionality of LB 915 in January, 1996. Op. Att'y Gen. No. 96007 (January 23, 1996). To avoid undue repetition, we will not reiterate all of the reasoning employed, or conclusions reached, in our previous opinion. The important point which we tried to convey at that time was that LB 915 proposed (without definition) to authorize "lotteries" for community betterment purposes involving "chancesor tickets", and the determination of winners in a manner not only as authorized under existing law, but also "[b]y some other method based on an element of chance; . . . ." (emphasis added). Because of the vague, broad language employed in LB 915, and the lack of definition, we concluded that, "to the extent that the amendment proposed by LB 915 [could be] construed to authorize `games of chance,' and the use of video or electronic devices to conduct what are, in actuality, `games of chance,' it would violate art. III, § 24." Id. at 4.
The same is true in response to your request concerning LB 534. The same problems of "vagueness" or "indefiniteness" presented by LB 915 exist with respect to any consideration of LB 534. Accordingly, to the extent LB 534 can be construed to authorize prohibited "games of chance", it would also violate art. III, § 24.
C. Conclusion
For the reasons noted above, we conclude that there is a serious question as to whether the devices authorizing "electronic" pickle card play in the manner provided under LB 522 are consistent with the Legislature's power to authorize "lotteries" under art. III, § 24, of the Nebraska Constitution. Should the Legislature deem it advisable to consider expanding such gambling, we believe that the amendments proposed under LB 723 provide a mechanism to allow the use of electronic or video technology to facilitate or enhance pickle card lottery activities in a manner which is consistent with the limitations imposed by art. III, § 24.
We further conclude that the proposed operation of "electronic" keno games under LB 522 is inconsistent with the Legislature's constitutional power to authorize "lotteries" under art. III, § 24. The concept of individual players activating gambling devices utilizing random-generation of numbers to determine winners at each device is, in our view, inconsistent with what we believe is the narrow manner in which the people, through their Constitution, intended to grant the Legislature power to permit "lotteries" for community betterment purposes. If enacted, we believe that this would amount to legislative authorization of a "game of chance" prohibited under our Constitution. We therefore conclude that the Legislature may not, consistent with art. III, § 24, enact legislation permitting the use of "electronic" keno devices in the manner proposed under §§ 8 to 13 of LB 522.
In reviewing your various questions concerning the constitutionality of these legislative proposals to expand gambling activity in Nebraska, we believe it is appropriate to quote the following language from an opinion issued in 1981 by New York Attorney General Robert Abrams in response to an inquiry as to whether certain forms of "electronic" gaming activities were, if allowed, consistent with New York's Constitution and statutes. 1981 N.Y. Op. Att'y Gen. 68 (September 8, 1981). Attorney General Abrams, in response to these proposals, stated:
 Those who favor introduction of the proposed games in New York will no doubt argue that these electronic games are similar in many respects to non-electronic games already utilized. . . . It is true that many similarities can be identified. What is controlling in my judgment is not the similarities, however, but the differences. Mankind has displayed characteristic ingenuity in the invention of ways to gamble. Since the taxonomy of the various forms of gambling has never to my knowledge, been precisely delineated, it is no great trick to push at the edges of any abstract definition which covers one variety of gambling games and emerge with a definition which covers a great many new varieties. In legal interpretation, however, it may be unwise to focus excessively upon abstract definitions of single terms; meaning must be sought in context as well. One need only step back a little from the immediate task of defining lottery for the problem to vanish. However much these . . . new games may be like old lottery games already played, the fact is that they are fundamentally like slot machines, and slot machines are [illegal]. . . . The proposed devices programmed with these new games are, finally, much more like casino gambling than anything [which] has ever been done. The people have very clearly never authorized this sort of casino gambling. Finally, it requires no more than simple common sense to conclude that New York law does not presently permit these games.
In sum, we believe that, if gambling opportunities in Nebraska are to be expanded in ways such as proposed under LBs 522 and 534, the Nebraska Constitution must be amended to provide the Legislature authority to enact such legislation. We understand, of course, that computer and video technology has advanced to a great degree in recent years, and that this resultant expansion has generated new and innovative ways to augment the potential for persons to perform activities in ways not previously possible. Any expansion of gambling to permit the type of gambling activities proposed under these bills, however, must be approved by the people through amendment of their Constitution. Until such time, we conclude that the expansion of gambling activities proposed under LB 522, §§ 8 to 13, and LB 534, would be unconstitutional.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
Don Stenberg
DON STENBERG, Attorney General
[4] In addition, we have issued opinions to the Tax Commissioner concluding that proposed "video" or "electronic" devices for the conduct of pickle card or keno lotteries were not consistent with the provisions of the Nebraska Pickle Card Lottery Act, Neb. Rev. Stat. §§ 9-301 to 9-356 (1991 and Cum. Supp. 1996) and the Nebraska County and City Lottery Act, Neb. Rev. Stat. §§ 9-601 to 9-653 (1991 and Cum. Supp. 1996). Op. Att'y Gen. No. 97004 (January 12, 1997) ("video" pickle card dispensing device); Op. Att'y Gen. No. 95074 (September 19, 1995) ("video" keno device). In neither case, of course, was it necessary for us to address whether use of these proposed "video" or "electronic" gambling devices, even if authorized by statute, would be consistent with the limitations imposed under art. III, § 24. Accordingly, our opinions were limited to addressing the particular issues of statutory interpretation raised by the Tax Commissioner in his requests; the constitutionality of these proposals was not considered in these opinions.
[5] The Court noted that, in 1984, the Legislature amended the statute defining "lottery" and specified that it did not include any gambling scheme involving mechanical, computer, electronic, or video gaming devices. 219 Neb. at 869, 367 N.W.2d at 698; 1984 Neb. Laws, LB 744, § 1 (codified at Neb. Rev. Stat. §28-1101(6) (Cum. Supp. 1984)). Because the legality of activities conducted under the earlier statutes continued to raise questions of potential civil or criminal liability, the Court proceeded to address the issue of the legality of the use of the electronic gaming machines under the prior statutes.