STATE of Iowa, Appellee,

v.

**Rick HUNT, d/b/a EZ Strip, Appellant.**

No. 93–66.

Supreme Court of Iowa.

Feb. 23, 1994.

As Corrected Feb. 24, 1994.

Donald L. Carr and Michael E. Marshall of Smith, Schneider, Stiles, Wimer, Hudson, Serangeli, Robinson, Mallaney, Shindler & Scalise, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Robert P. Ewald and Kathleen Deal, Asst. Attys. Gen., for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

This appeal is brought by the defendant, Rick Hunt, from his convictions of violating Iowa Code sections 716B.2 and 716B.4 (1991). Hunt challenges the sufficiency of the evidence to support the convictions. Hunt also challenges evidentiary rulings by the district court alleging that he was unfairly prejudiced and thereby denied a fair trial. We affirm.

## I.

On May 20, 1992, the State of Iowa filed a trial information accusing Hunt of three counts of improper discharge, storage, and disposal of hazardous waste. Count I alleged

a violation of Iowa Code sections 455B.186(1) and 455B.191(2) for knowingly discharging a pollutant into a waterway of the State between April 17, 1992 and May 14, 1992. Count II alleged a violation of Iowa Code section 716B.4 for knowingly, or with reason to know, storing a hazardous waste without a permit between April 17, 1992 and May 14, 1992. Count III alleged a violation of Iowa Code section 716B.2 for knowingly, or with reason to know, disposing of hazardous waste or arranging for or allowing the disposal of hazardous waste at an unauthorized location between April 17, 1992 and May 14, 1992.

Hunt's trial on these charges commenced on November 16, 1992. At the conclusion of the State's case-in-chief Hunt moved for a directed verdict of acquittal with respect to all charges against him. The district court denied the motion. Hunt renewed his motion for a directed verdict of acquittal after the presentation of his evidence and the State's rebuttal evidence. The district court again denied the motion.

The jury returned convictions against Hunt on all three counts. Hunt then filed a motion for a new trial and a motion in arrest of judgment. Because these motions restated the grounds argued in Hunt's motion for a directed verdict, the district court treated them as a motion for judgment notwithstanding the verdict.

The district court granted Hunt's motion with respect to the conviction on count I and dismissed the charge. The court denied Hunt's motions with respect to the convictions on count II and III. After sentencing Hunt filed his notice of appeal. The State filed a notice of cross-appeal from the dismissal of count I but subsequently dismissed the cross-appeal.

## II.

Rick Hunt was the co-owner and sole operator of EZ Strip Corporation which engaged in the business of removing paint and rust from metal objects. Objects such as car parts and industrial grates were dipped into large tanks of caustic chemicals, allowed to hang until excess chemicals dripped back into the tanks, and then rinsed off with high pressure water hoses. As a result of this process, waste water mixed with paint, undercoating, body filler, dirt, and chemical residues ran into a floor drain inside the EZ Strip building. The drain had a strainer basket that trapped larger particles. The smaller particles and liquids passed through a filtration system: a trough leading outside to a large concrete separator/sedimentation tank. In the separator, sediment would settle to the bottom as sludge and clarified water flowed into the city sewer system from there. The sludge that collected in the strainer basket and the separator was to be dried and burned in an oven on the premises. Burning turned the sludge into a nonhazardous ash. EZ Strip had an EPA identification number as a small quantity generator of hazardous waste and as such could accumulate up to 6000 kilograms (approximately thirty barrels in liquid form) of hazardous waste, but it had to be disposed of in 180 days.

On April 17, 1992, EZ Strip premises were inspected by Steven Ryder, a fire inspector. He noted that an unlocked makeshift shed contained several mud-covered and rusting barrels and that the separator appeared to be full, clogged or nonoperational.

On May 14, 1992 Ryder returned to the EZ Strip premises accompanied by the attorney general's environmental team to search the premises pursuant to a warrant. Hunt signed a consent to search. During the search samples were taken from the barrels in the makeshift shed, the separator, the trough leading to the separator, and several other tanks and barrels on the premises. Subsequent testing of the samples indicated that hazardous materials were present in several of the containers. The separator tank still appeared to be nonoperational. Searchers pulled a submergible sump pump from the trough leading to the separator. A hose fitting the opening of the sump pump and long enough to reach the sewer opening was found nearby, as was an electrical extension cord. Mad Creek ran behind the EZ Strip building: the separator lay approximately twenty feet from Mad Creek and approximately ten feet from where the ground sloped to the creek.

At the jury trial the search team members testified about their observations and the results of testing the samples. Four former EZ Strip employees testified, over Hunt's objections, about the stripping process and their practices and observations concerning disposal of the resulting sludge. Two of these former employees testified that contaminated waste water had at times been pumped directly outside, not through the filtration system. One employee testified that she hauled grates to Hunt's rural residence and dropped them into what appeared to be a pit used for burning. None of the former employees knew how the accumulated barrels of sludge were disposed. Paul Brandt, the State's expert, an environmental specialist with the Department of Natural Resources, gave his opinion that an estimated 227 barrels of hazardous "waste" were located on the EZ Strip premises on the day of the search.

Upon conviction the district court sentenced Hunt on counts II and III to two concurrent one-year terms of imprisonment and then suspended all but thirty days.

### III.

■ The standard of review that we employ on a denial of a motion for judgment of acquittal is based on the substantial evidence standard. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). The evidence is considered in the light most favorable to the State. *State v. LaPointe,* 418 N.W.2d 49, 51 (Iowa 1988). The favorable light includes the making of legitimate inferences and presumptions that may fairly and reasonably be deduced from the evidence in the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984). Our court considers all of the evidence, not just the evidence which supports the verdict. *State v. Blair,* 347 N.W.2d 416, 419 (Iowa 1984). Direct and circumstantial evidence are equally probative so long as the evidence raises "a fair inference of guilt and do[es] more than create speculation, suspicion, or conjecture." *State v. Hamilton,* 309 N.W.2d 471, 479 (Iowa 1981).

### IV.

Iowa Code section 716B.4 provides: "A person who knowingly or with reason to know, treats or stores hazardous waste without a permit issued pursuant to 42 U.S.C. § 6925 or § 6926 is guilty of an aggravated misdemeanor...."

■ The term "hazardous waste" as it is used in chapter 716B

> means a hazardous waste as defined in section 455B.411, subsection 4, or a hazardous substance as defined in 42 U.S.C. § 9601, or a hazardous substance as designated by regulations adopted by the administrator of the United States environmental protection agency pursuant to 42 U.S.C. § 9602.

Iowa Code § 716B.1(3). Hunt argues the evidence is insufficient for a conviction for two reasons. First, he claims the sludge is not "waste" and therefore not "hazardous waste." This argument proceeds from the assumption that Hunt intended to recycle the sludge by drying and burning it in an oven on the premises. Second, Hunt claims the State failed to prove the waste was illegally stored. This assertion is based on the federal regulation that allows an accumulation of 6000 kilograms of hazardous waste for ninety days and grants an additional grace period for disposal of amounts in excess of 6000 kilograms. Applying the regulation, Hunt claims the State did not prove that more than 6000 kilograms of sludge had been stored for more than ninety days on the EZ Strip property.

The jury was given the statutory definition of "hazardous waste." *See* Iowa Code §§ 716B.1(3), 455B.411(4). It was additionally instructed that "hazardous waste" does not include: "An otherwise hazardous substance or product intended for use in a manufacturing or production process or to be recycled or used as fuel."

This instruction thus required the jury to determine Hunt's intent with respect to the sludge. Specifically, the jury had to resolve the factual question of whether Hunt really intended to recycle the sludge as fuel to heat the facility.

The State's expert witness, Paul Brandt, estimated that the total amount of sludge on EZ Strip property on May 14, 1992, would fill

about 227 barrels. The sludge thus weighed about fifty tons.

Given the relatively small size of the business the jury could reasonably have concluded that this quantity was far in excess of an amount that could ever be reasonably recycled by burning it in the oven for heat. During the two or three years prior to May 14, 1992, very little sludge had been recycled in the EZ Strip's burn-off oven. It is true that in 1989 Hunt obtained a special waste authorization permit from the Department of Natural Resources which allowed him to burn sludge in the oven and dispose of the nonhazardous ash at the Muscatine county landfill. However, landfill records showed that only one delivery of ash was ever made, and it occurred in April 1989.

Hunt admitted he had no intention of recycling the sludge in the sedimentation tank. He also admitted the oven was not in service at the time of the inspection as it had been moved to a building at another location. We conclude the evidence was sufficient for the jury to find that the sludge was "waste" because Hunt had no intent to recycle it.

Regarding the question of "illegal storage" Hunt claims the right to store up to 6000 kilograms of hazardous waste for ninety days and an additional ninety-days grace period for accumulations of sludge over 6000 kilograms. The factual issue for the jury was whether the State proved that more than thirty barrels of sludge were stored on EZ Strip property ninety days before May 14, 1992. On May 14, 1992, there were approximately 227 barrels of sludge on EZ Strip property. In order for EZ Strip to be saved by the grace period, all but thirty barrels of this amount must have accumulated within the preceding ninety days. That is, between about February 13, 1992 and May 14, 1992, EZ Strip must have accumulated at least 197 barrels of sludge (about 43 tons).

Given the nature of the stripping process and the relatively small size of the facility, the jury could reasonably have found that nowhere near 197 barrels of residue could have been generated in such a short period. Moreover, the defendant himself and one of the witnesses testified that it would "take quite some time to fill up that little pit,"

referring to the catch basin inside the building. If it took "quite some time" to fill up the catch basin, which apparently held only a few barrels, it would have taken much longer to fill up the whole filtration system, which held over 200 barrels.

The above calculations give Hunt the benefit of the doubt by assuming that ninety days before May 14, 1992 he had only thirty barrels of sludge on his property. However, from Hunt's admissions to special agent Richard Searl, the jury could reasonably have concluded that the sedimentation tank, which itself could hold up to 200 barrels of sludge, was already full and clogged "about a year before that visit on May 14."

Hunt's admission is consistent with Steven Ryder's testimony that on April 17, 1992 when he inspected the property, the sedimentation tank "appeared to be full." Based on the above evidence and reasonable inferences and conclusions derivable from it, there is substantial evidence to support the jury's implicit finding that Hunt's grace period defense was untenable. Even considering the grace period provision, there is substantial evidence that the hazardous material found at EZ Strip on May 14, 1992 was a hazardous waste and that Hunt stored it without a permit.

## V.

Count III charged illegal disposal of hazardous waste. The evidence relied on by the State was that EZ Strip's filtration system was clogged on April 17, 1992. This meant that any contaminated water could not be processed before leaving the facility. From April 17 to May 14, 1992, normal operations occurred which generated significant quantities of contaminated waste water. Evidence was introduced of a submerged pump with a long enough hose to reach from the trough to the sewer opening, together with electrical cord to reach from the building to the pump. In addition, a former EZ Strip employee, Robert Howard, who worked there from 1990 until 1992, testified to Hunt's knowledge of the waste and disposal problem. Another former employee, who worked there from 1987 to 1990, testified that she

saw the catch basin frequently clogged and that it needed to be pumped out.

The State was required to prove that the unlawful acts occurred and that Hunt knew they were being committed. *See State v. Clark,* 346 N.W.2d 510, 512 (Iowa 1984). Applying our standard of review, we believe there is substantial evidence to support the jury's conviction of Hunt for disposal of hazardous waste at an unauthorized location, namely, the city sewer system.

## VI.

The final issue arises from Hunt's motion in limine to exclude testimony concerning Hunt's conduct occurring prior to the dates of the offenses alleged in the trial information—April 17, 1992 through May 14, 1992. Preservation of this alleged error was made by timely objection at trial.

The State presented testimony of several former employees regarding wrongful disposal of hazardous waste prior to these dates. Hunt claims this evidence was irrelevant, unfairly prejudicial and violative of Iowa Rule of Evidence 404(b). The district court allowed the testimony with the caveat that it was only for the purpose of showing motive, intent, or whether any acts were caused by accident or mistake.

Our review of this issue is to determine if there has been an abuse of discretion. *State v. Lockheart,* 410 N.W.2d 688, 697 (Iowa App.1987); *State v. Baccam,* 476 N.W.2d 884, 888 (Iowa App.1991). Evidence of similar acts is admissible on the issue of knowledge or intent if the trial court determines that its probative value outweighs the danger of prejudice to the defendant. Iowa R.Evid. 403, 404(b); *State v. Kern,* 392 N.W.2d 134, 137 (Iowa 1986); *State v. Thomas,* 275 N.W.2d 211, 215 (Iowa 1979). When a defendant's knowledge is a crucial element at trial and the uncharged act tends to prove knowledge with respect to the charged crime, the uncharged act becomes relevant and is admissible under a rule 404(b) analysis. *State v. Mendiola,* 360 N.W.2d 780, 781–82 (Iowa 1985).

Applying our standard of review, we find no abuse of discretion in admitting this evi-dence. The convictions of Hunt on counts II and III are affirmed.

**AFFIRMED.**