STATE of Iowa, Appellee,

v.

Tom KHALSA a/k/a Sotantar Khalsa, and Michael Martin, Appellants.

No. 94–1211.

Court of Appeals of Iowa.

Nov. 27, 1995.

Jerry R. Foxhoven, Des Moines, for appellants.

Thomas J. Miller, Attorney General, Robert P. Ewald and Ray Johnson, Assistant Attorneys General, and John P. Sarcone, County Attorney, for appellee.

Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.

CADY, Judge.

Tom Khalsa, also referred to as Sotantar Khalsa, and Michael Martin appeal their convictions of conspiracy to commit theft by deception and aiding and abetting in establishing or advertising a lottery. We affirm the convictions.

Khalsa and Martin worked as telemarketers for the First Financial Clearing Services Group (FFCSG). They would call predominantly elderly persons informing them they had been selected from thousands of names as winners of "The Owner's Choice Award." Before delivering the nonspecific award, Khalsa and Martin would ask the "winners" to send a promotional fee to the company.

Khalsa and Martin were charged with (1) conspiracy to commit theft by deception, (2) committing or aiding and abetting in the commission of theft by obtaining money or the transfer of possession or control of money by deception, and (3) aiding and making, establishing, advertising or making public a scheme for a lottery.

Among other evidence at trial, the State presented testimony from Carmel Benton, an investigator from the Consumer Protection Division of the Attorney General's office, who had arranged to personally field calls from FFCSG pretending to be a potential "winner." Benton, who has a bachelor's degree in Consumer and Family Sciences and had been investigating telemarketing fraud for approximately four and a half years prior to trial, testified elderly persons receiving calls from FFCSG would believe they had won a large cash award. The State also admitted into evidence audiotapes and transcripts of the audiotapes of telephone conversations between State investigators and FFSCG telemarketers.

At the close of the State's evidence, the defendants moved for a directed verdict on the lottery charge, claiming the evidence failed to show an element of chance was involved in the telemarketing operation. The court found, however, sufficient evidence existed to generate a jury question concerning the lottery charges against Khalsa and Martin since the winners were taking a "chance" on what was included in the Owner's Choice Award. The jury found Khalsa and Martin guilty of conspiracy to commit theft by deception and guilty of making, establishing or advertising a lottery.

## I. Lottery

Khasla and Martin first contend the trial court erred in refusing to direct a verdict of acquittal in their favor concerning the lottery charge. They claim the State failed to show any evidence of the existence of a lottery, as there was no element of chance involved in the award of prizes. Since the "winners" had been informed a prize had already been selected for them and they would receive it upon the receipt of the processing fee, Khalsa and Martin contend there was no "chance"

element present. They further argue the charges of theft by deception and advertising a lottery are mutually exclusive, as one involves the payment of money to purchase some item and the other involves the payment of money for a chance to win some item.

### A. Standard of Review

A denial of a motion for judgment of acquittal based on the alleged insufficiency of the evidence is reviewed on the "substantial evidence" standard. *State v. Schrier,* 300 N.W.2d 305, 306 (Iowa 1981). A verdict will be upheld if substantial evidence supports the charge. *State v. LeGear,* 346 N.W.2d 21, 23 (Iowa 1984); *State v. Hunt,* 512 N.W.2d 285, 288 (Iowa 1994). Substantial evidence means such evidence as could convince a trier of fact the defendant is guilty of the crime charged beyond a reasonable doubt. *Id.* We view the evidence in the light most favorable to the State, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984).

### B. Chance Element

Iowa law provides persons who "make or aid in making or establishing, or advertise or make public a scheme for a lottery ..." commit a serious misdemeanor. Iowa Code § 725.12 (1993). A lottery is statutorily defined as "any scheme, arrangement, or plan whereby a prize is awarded by chance *or any process involving a substantial element of chance* to a participant who has paid or furnished consideration for such chance." Iowa Code § 725.12 (1993) (emphasis added). Thus, three elements are necessary for the existence of a lottery: a prize, chance, and consideration. *St. Peter v. Pioneer Theatre Corp.,* 227 Iowa 1391, 291 N.W. 164 (1940).

If one of these elements is absent, the scheme is not a lottery. 54 C.J.S. *Lotteries* § 3 (1948). For example, the gratuitous dis-

tribution of property by chance, if not done as a means to evade the law and without the exchange of consideration, does not constitute a lottery. *Affiliated Enterprises v. Gruber,* 86 F.2d 958, 959 (1st Cir.1936); *State v. Hundling,* 220 Iowa 1369, 1370, 264 N.W. 608, 609 (Iowa 1936) (giving prizes away is not unlawful even when the recipient is determined by lot or chance as long as no consideration is paid for the chance to receive the prize).

Khalsa and Martin argue the element of chance is absent from the telemarketing scheme because all winning participants who pay the fee receive some prize. On the other hand, if the fee is not paid, no prize is given away.

We find substantial evidence exists to support the charges. The argument by Khalsa and Martin overlooks that the "winners" of the "Owner's Choice Award" were originally determined by chance, purportedly selected from a pool of approximately 75,000 people. We believe this satisfies the chance element of section 725.12.[1] The chance element refers to the absence of skill or design. *See* 54 C.J.S. *Lotteries* 54 (1948). The exact method in which the chance is applied to the distribution of prizes is immaterial. *Video Consultants of Nebraska v. Douglas,* 367 N.W.2d 697, 701 (Neb.1985). Moreover, the chance element is not eliminated simply because "winners" are determined before the actual prizes were awarded, as long as the pool of winners were selected by chance. *See Contact, Inc. v. State,* 212 Neb. 584, 324 N.W.2d 804, 806–08 (1982).

We also find substantial evidence to support the elements of a prize and consideration. The winners were notified they had won the "Owner's Choice Award" and were required to pay a substantial processing fee in order to receive the prize. Thus, the prizes were awarded subject to the payment of consideration. They were not gratuitously

---

1. The trial court found the element of chance from the size of the award to be given to the winner. On appeal, this court may affirm for any proper ground for which support is found in the record. *Langner v. Mull,* 453 N.W.2d 644, 647 (Iowa App.1990). If our results are consistent with the trial court's results, but for different reasons, we will affirm. *S & S, Inc. v. Meyer,* 478 N.W.2d 857, 860 (Iowa App.1991). We need not address this issue as we find substantial evidence of the chance element in the method the winners were purportedly selected.

awarded. Furthermore, the statute does not require the consideration be paid before winners are selected, but only that the consideration was for the "chance" to be awarded a prize. *See* Iowa Code § 725.12 (1993).[2]

## C. Mutual Exclusivity

■ Khalsa and Martin also contend the lottery charge and the conspiracy to commit theft by deception charge are mutually exclusive. As such, they contend the trial court erred in denying their motions for judgment of acquittal on the lottery charge.

We find the two charges are not mutually exclusive. The elements necessary to prove theft by deception include: (1) a person obtaining the possession, control or ownership of the property of another; (2) by deception. Iowa Code § 714.1 (1993). Here the jury could have concluded Khalsa and Martin deceptively stated or implied the winners had been selected to receive a large cash award which they had no intention of sending, in order to obtain the processing fees. The charges address different crimes with different elements. We find the two convictions are not mutually exclusive. Substantial evidence exists to support the convictions of both conspiracy to commit theft by deception and illegally advertising a lottery.

## II. Opinion Testimony

Khalsa and Martin claim the trial court erred in allowing the State's witness Carmel Benton testify as to what elderly persons "believe," as it is improper expert testimony and calls for speculation.

■ Our scope of review is for the correction of errors of law. Iowa R.App.P. 4. On this evidentiary issue, we review for an abuse of discretion. *State v. Halstead,* 362 N.W.2d 504, 506 (Iowa 1985). In order to show an abuse of discretion, one generally must show that the court exercised its discre-

tion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell,* 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor,* 132 Vt. 603, 326 A.2d 138, 140 (Vt.1974)). As we examine the trial court's ruling, we are mindful that "[t]he general rule in this jurisdiction is one of liberality in the admission of opinion evidence." *State v. Hummell,* 228 N.W.2d 77, 82 (Iowa 1975).

■ The admissibility of expert testimony is a matter committed to the sound discretion of the district court. *Poyzer v. McGraw,* 360 N.W.2d 748, 752 (Iowa 1985). Iowa Rule of Evidence 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Again, we employ a liberal rule which allows expert testimony if it will aid the jury and is based on special training, experience, or knowledge with respect to the issue in question. *Id.*

■ We find the trial court did not abuse its discretion in allowing Carmel Benton's expert testimony regarding how elderly persons perceive the type of claims involved in this particular telemarketing operation and other typical telemarketing operations. Benton received her bachelor's degree in Consumer and Family Science. She has been employed by the Attorney General's office as an investigator dealing primarily with telemarketing fraud. As an investigator, Benton has assisted numerous telemarketing victims, the majority of which are elderly. She has also attended seminars and conferences dealing with telemarketing fraud and related subjects. Carmel Benton's education, training, and experience in consumer sciences and telemarketing fraud give her the qualifica-

---

**2.** Iowa Code section 725.12 defines a lottery, in relevant part, as "any scheme ... whereby a prize is awarded by chance ... to a participant who has paid consideration for such chance." Although the consideration requirement of the statute is defined in the past tense and is tied to the chance element of the crime, we do not believe this means the consideration element

must precede the chance element. A scheme which requires consideration in order for "winners" to actually be awarded their prizes also constitutes a lottery. *United States v. Tansley,* 986 F.2d 880, 886 (5th Cir.1993) (telemarketing scheme where "prizes" were not mailed unless a fee was paid). "Consideration for such chance" refers to the chance to actually receive a prize.

tions necessary to discuss telemarketing fraud as an expert.

The expert testimony presented would also have aided a jury not familiar with telemarketing fraud and the elderly's reaction to telemarketing operations. The testimony may be helpful to the jury in evaluating whether the advertisement and representations made by Khalsa contained an implied claim the "Owner's Choice Award" consisted of a large cash prize. Moreover, other tribunals have allowed expert testimony of this nature concerning how consumers would interpret an advertisement in a particular manner. *Thompson Medical Co., Inc.*, 104 F.T.C. 648, 689–90 (1984), *aff'd* 791 F.2d 189 (D.C.Cir. 1986).

In light of the liberal discretion given to trial courts concerning the admission of expert testimony, we find the trial court did not abuse its discretion in allowing Carmel Benton to testify about how elderly persons perceive telemarketing claims.

### III. Transcripts

Khalsa and Martin further allege the trial court erred in admitting into evidence both the audiotapes and transcripts from the audiotapes concerning telephone conversations recorded by State investigators. They contend transcripts of the audiotapes were inadmissible under the "Best Evidence" rule.

We review the trial court's decision on admission of evidence for an abuse of discretion. Only when a trial court abuses its discretion in balancing the probative value of the evidence against the danger of undue prejudice will a reviewing court reverse the ruling. *State v. Hubka*, 480 N.W.2d 867, 868 (Iowa 1992). In order to show an abuse of discretion, one generally must show that the court exercised its discretion " 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.' " *State v. Blackwell*, 238 N.W.2d 131, 138 (Iowa 1976) (quoting *Weeks v. Burnor*, 132 Vt. 603, 326 A.2d 138, 140 (Vt.1974)).

When a party is attempting to prove the contents of a writing, recording, or photograph, the courts require the original to be produced, unless it falls under exceptions carved out by the Iowa Rules of Evidence. *See* Iowa R.Evid. 1001–1008. The "Best Evidence" rule requires production of original documents unless their absence is sufficiently explained. *Brintnall v. Professional Investors of Iowa, Inc.*, 218 N.W.2d 453, 455–56 (Iowa 1974). A trial court in its sound judicial discretion determines what is best evidence in a given situation. The rule goes only to the competency of the evidence, not to its relevancy, materiality, or weight. 32A C.J.S. *Evidence* § 778 (1964). The purpose of the best evidence rule is to secure the most reliable information as to the contents of documents, when those terms are disputed. Charles McCormick, et al., *McCormick on Evidence* § 243 (4th ed. 1984).

Here, the contents and terms of the tapes were not in dispute. The State was not trying to show the contents of the tapes, but rather the contents of the conversations. *See United States v. Fagan*, 821 F.2d 1002, 1008–09, n. 1 (5th Cir.1987). The best evidence rule was, therefore, inapplicable. *Id.* Moreover, Khalsa and Martin do not contest the reliability or competency of the transcripts themselves. The purpose of the "Best Evidence" rule would not be served by exclusion of the transcripts.

We find the trial court did not abuse its discretion in admitting both the transcripts and the audiotapes into evidence. The court weighed the probative value and the potential prejudice of the transcripts in determining their admissibility. We find no abuse of discretion.

**AFFIRMED.**