# IN THE COURT OF APPEALS OF IOWA

No. 19-2083
Filed December 16, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JERRY WAYNE EVANS JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

        A defendant appeals his convictions for three counts of sexual abuse in the third degree.  **AFFIRMED.**

        Priscilla E. Forsyth, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A jury convicted Jerry Wayne Evans Jr. of three counts of sexual abuse in the third degree for committing sex acts against the teenage daughter of his long-time girlfriend.[1]  On appeal, Evans contends (1) the district court abused its discretion in admitting text messages extracted from the victim's cell phone over his objection under the best evidence rule and (2) the State violated his due process rights by returning the phone to the victim despite its evidentiary value.

Because Evans did not preserve error on his constitutional claim, we do not reach it.  On the best evidence rule, because Evans did not question the competency of the State's exhibits, the district court properly overruled his objection to the text messages.  Finding no abuse of discretion in the court's ruling, we affirm.

## I.  Facts and Prior Proceedings

For most of her life, K.T., age sixteen at the time of the trial, viewed Evans as a father figure.  Evans began dating her mother when K.T. was three years old and moved in with them about a year later.  Since then, he has been the household's breadwinner—paying rent and other bills.  He also provided an allowance to K.T. and gave her gifts, including a new cell phone.

But their association had a much darker side.  K.T. testified that Evans began sexually assaulting her when she was ten years old.  The abuse escalated in September 2016; she was starting ninth grade and they moved to a new

---

[1] At the trial, the mother referred to Evans as her fiancé.

residence.[2] Evans sent her text messages demanding oral sex any time she asked for money or permission to hang out with friends.

K.T. also recalled a week when she was home sick from school and Evans engaged in sexual intercourse with her two times. When asked about her irregular attendance record in high school, K.T. responded: "Sometimes [Evans] would ask me to stay home and fake sick so I can do stuff with him." The sexual abuse continued until she was fifteen years old.

In the spring of 2018, K.T. had an argument with her mother and threatened to report Evans. Because her mother did not believe her, K.T. confided in her older brother for the first time about the abuse. As proof, she showed her brother inappropriate text messages she received from Evans. The brother alerted their grandfather, who took K.T. to the hospital, where doctors reported the allegations to the police.

During a follow-up interview with police, the grandfather revealed that K.T. had shown him a troubling, sexually explicit text message from Evans on her cell phone. Hoping to find more incriminating evidence in the text conversations, police took possession of K.T.'s phone.

Cedar Falls Police Officer Shea McNamara used a program called Cellebrite to pull data from K.T.'s iPhone.[3] He used an "advanced logical extraction" to recover call logs and text conversations between K.T. and Evans. The officer explained that "logical extraction" was the preferred method for

---

[2] Before then, K.T.'s two older brothers had also lived with them.

[3] Officer McNamara testified he was certified as a "Cellebrite physical analysist," which meant he received training from the company that enabled him to "pull information from digital devices."

recovering data from iPhones. The extraction report recovered sixty-one text messages, including some texts that had been previously deleted from the cell phone. After a few days, police returned the cell phone to K.T.

In June 2018, the State charged Evans with three counts of sexual abuse in the third degree, class "C" felonies, in violation of Iowa Code section 709.4(1)(b)(2), (a), and (3)(d) (2018). The trial information alleged the three offenses occurred between September 2016 and March 2018.

As the prosecution progressed, the district court entered a protective order in which the parties stipulated that the State would provide defense counsel "all cell phone discovery material produced by the government." In a second stipulated protective order, the court allowed Evans "access to the cell phone information in order to assist counsel in preparing his defense."

In a pretrial motion to exclude, the defense objected to admission of the cell phone extraction citing the best evidence rule. *See* Iowa R. Evid. 5.1002. Evans argued the text messages were inadmissible because they were neither original documents nor properly authenticated duplicates and the State provided no excuse for its failure to provide the originals. Evans claimed admission of the extraction would be unfair because it was "an incomplete record of the text messages" and also that the Cellebrite program "was not the best practice or the best method by which a download of a phone could be done."

In resistance, the State argued the best evidence rule did not preclude admission of the text messages. The resistance asserted "any contention [Evans] has with the method used to perform the Cellebrite extraction or in reference to user deleted messages goes to the weight of the extraction, not to its admissibility."

Persuaded by the State's resistance, the court denied Evans's motion. The court explained:

> The evidence in question is a complete extraction of all information obtained by law enforcement at the time of the extraction utilizing the chosen method of law enforcement at that time. The defendant's contention that items were deleted or that more information could have been obtained by law enforcement is not a basis to exclude the evidence that was extracted. The contentions of the defense regarding the absence of evidence goes to the weight of the evidence of the extracted material, not to its admissibility.

At the seven-day trial, the jury heard testimony from K.T., her family members, and the investigating officer. As exhibits, the State offered the extraction report and call log generated from K.T.'s cell phone. The jury convicted Evans on all three counts. Evans moved for a new trial, claiming the evidentiary rulings violated his due process and fair trial guarantees under both the federal and state constitutions. The court denied the motion and entered judgment in December 2019. Evans now appeals.

## II. Scope and Standards of Review

We review most evidentiary rulings for an abuse of discretion. *State v. Lorenzo Baltazar*, 935 N.W.2d 862, 868 (Iowa 2019). We reverse only if the ruling "rested on grounds or reasoning that were clearly untenable or clearly unreasonable." *State v. Plain*, 898 N.W.2d 801, 811 (Iowa 2017). Grounds are untenable or unreasonable if the ruling was "based on an erroneous application of the law or not supported by substantial evidence." *Id.* (quoting *State v. Dudley*, 856 N.W.2d 668, 675 (Iowa 2014)).

If we were to reach Evans's due process claim, our review would be de novo. *See id.* at 810.

### III. Analysis

#### A. Admission of Cell Phone Extractions Under Best Evidence Rule

On appeal, Evans echoes the arguments from his motion to exclude his text messages to K.T. He contends the district court abused its discretion in allowing the jury to hear evidence of "incomplete text conversations and unauthenticated texts out of context." He argues the text messages were inadmissible under the best evidence rule. *See* Iowa Rs. Evid. 5.1001–.1004. Under the best-evidence umbrella, Evans asserts: (1) the State's cell phone evidence did not satisfy the original-writing or duplicate requirements; (2) no exceptions justify the State's failure to produce an original writing; and (3) principles of fairness require excluding the evidence.

Defending the evidentiary ruling, the State contends the text messages were originals or at least admissible duplicates because they "were printouts of data from K.T.'s phone," as allowed under Iowa Rule of Evidence 5.1001. In the alternative, the State argues admission of the text messages was harmless error because strong evidence supported the jury's verdicts even without the text messages.

We start with the contours of the best evidence rule. *See* Iowa Rs. Evid. 5.1001–.1008. "When a party is attempting to prove the contents of a writing, recording, or photograph, the courts require the original to be produced, unless it falls under exceptions carved out by the Iowa Rules of Evidence." *See State v. Khalsa*, 542 N.W.2d 263, 268 (Iowa Ct. App. 1995). An original writing may include electronically stored information in the form of a "printout—or other output readable

by sight—if it accurately reflects the information."[4] The original-writing requirement comes into play only when a party challenges the competency of the evidence. *Id.* Thus the best evidence rule is not a basis to preclude admission of evidence for objections of "relevancy, materiality, or weight." *Id.* (citing C.J.S. *Evidence* § 778 (1964)). We emphasized in *Khalsa* that the purpose of the best evidence rule "is to secure the most reliable information as to the contents of documents, when those terms are disputed." *Id.* (citing Charles McCormick, et al., *McCormick on Evidence* § 243 (4th ed. 1984)).

Here, the district court decided Evans's objections to the text messages went to the *weight* of that evidence, rather than its admissibility. In other words, the court found the best evidence rule did not apply. We find that ruling consistent with our case law.

In both his pretrial motion and appellate brief, Evans disputes the "completeness" of the evidence, claiming admission of a partial record is unfair for authentication reasons. But an admissibility challenge based on whether the State should have retrieved more text messages does not go to the *competency* of the evidence—the purpose of the best evidence rule. In fact, Evans does not make any challenge as to the competency of the text messages considered by the jury. By arguing his texts to K.T. were taken out of context, he acknowledges being the person who sent them.

---

[4] In his appellate brief, Evans relies on authority from other jurisdictions for the proposition "that text messages constitute writings for the purposes of the best evidence rule." *See Dalton v. Commonwealth,* 769 S.E.2d 698, 704 (Va. Ct. App. 2015) (collecting cases). Although Iowa case law has yet to address this issue, we have no reason to believe text messages would not fall within the definitions of writings or recordings in Iowa Rule of Evidence 5.1001.

Evans cites *Lorraine v. Markel American Insurance Co.*, 241 F.R.D. 534, 577 (D. Md. 2007), to support his claim that the text messages were inadmissible under the best evidence rule. But a close reading of *Lorraine* undermines his position. The federal district court recognized that text messages could be authenticated by a "witness with personal knowledge" and "circumstantial evidence of distinctive characteristics." *Lorraine*, 241 F.R.D. at 556. The court reviewed other cases that found "the use of the defendant's first name," "the subject matter of the messages," and "the presence of the defendant's correct address in the messages" were sufficient methods of authentication. *Id.* (citing *In re F.P.*, 878 A.2d 91, 93–94 (Pa. 2005), and *United States v. Simpson*, 152 F.3d 1241, 1249 (10th Cir. 1998)). Most relevant here, *Lorraine* cited *United States v. Tank*, 200 F.3d 627, 629–31 (9th Cir. 2000), where the circuit court found that facts tying the defendant to the text messages, including his name, adequately authenticated the evidence *even if certain portions of the messages had been deleted. Id.*

Evans did not deny sending the text messages admitted into evidence. Even if he had, K.T. confirmed that he sent the messages and that his contact name on her cell phone was "Dad." On these facts, the district court properly overruled Evans's objection. As we held in *Khalsa*, the best evidence rule does not bar admission of evidence when the objecting party fails to dispute the "reliability or competency" of the evidence itself. 542 N.W.2d at 268. Evans does not claim that someone else sent the messages nor does he dispute their content. So his objection has no basis in the best evidence rule. The court did not abuse

its discretion in admitting the State's cell phone evidence over Evans's objection on these grounds.[5]

### B. Failure to Preserve Potentially Exculpatory Evidence

Evans also argues the admission of the text messages violated his due process rights under both the federal and state constitutions. *See* U.S. Const. amend. V, XIV; Iowa Const. art. I, sec. 9. Evans contends Officer McNamara "acted in bad faith when he returned the cell phone to K.T." instead of preserving the phone for the defense to "extract and analyze" any remaining evidence.

To counter, the State contends Evans did not preserve error on his constitutional claim in his motion to exclude. Evans insists the issue is properly before us because he raised it in his motion for new trial and his motion in arrest of judgment. But in his appellant's brief, Evans does not cite a place in the record where that issue was raised and decided by the district court. *See* Iowa R. App. P. 6.903(2)(g)(1) (requiring argument section of brief to include "[a] statement addressing how the issue was preserved for appellate review, with references to the places in the record where the issue was raised and decided"). And our review of the record reveals no ruling on Evans's constitutional claim. Thus Evans failed to preserve the issue for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

**AFFIRMED.**

---

[5] We need not address the State's alternative claim that Evans did not suffer prejudice from admission of the text messages.