# IN THE COURT OF APPEALS OF IOWA

No. 23-1820
Filed April 23, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHRISTOPHER JOHN JURGENS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Crawford County, Roger L. Sailer,

Judge.


        Christopher Jurgens appeals his conviction for second-degree sexual

abuse.  **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Bradley M. Bender

(argued), Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Sheryl Soich (argued), Assistant

Attorney General, for appellee.


        Heard at oral argument by Ahlers, P.J., Badding, Chicchelly, Buller, JJ., and

Telleen, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**AHLERS, Presiding Judge.**

A child confided in her classmate that her mother's ex-boyfriend, Christopher Jurgens, had been sexually abusing her for several years. That set off a chain of events culminating in Jurgens's conviction for one count of sexual abuse in the second degree.

## I.    Background Facts

In 2013, Jurgens moved into the home of his girlfriend and her three children. While he lived with them for the next five years, Jurgens took on a parental role in the home, requiring the children to call him "dad," assigning them chores, and acting as the family disciplinarian.

The youngest child was just six years old when Jurgens moved into the family home. She was excited to have someone serve as a father figure to her, and the two "kind of clicked" when Jurgens moved in. When the child was eleven, Jurgens and his girlfriend broke up, and Jurgens moved back to his parents' house in a neighboring town. That did not end Jurgens's involvement in the child's life though. He continued to see her regularly, taking her out to his parents' home for visits and attending her activities. He even purchased her a cell phone and computer for Christmas.

At school, the child heard rumors that her classmate had been sexually abused. After track practice one day, the child told the classmate that she had also been sexually abused. Then, after the child's older sister brought up the classmate's abuse, the child confided in her sister that Jurgens had been sexually abusing her. The two sisters workshopped ways for the child to avoid Jurgens.

About a week later, the classmate told the school principal that he should talk to the child. The principal followed up and met with the child. The child told the principal that Jurgens was sexually abusing her. The principal then contacted the Iowa Department of Human Services.[1]

The child went to a child advocacy center where she underwent a forensic interview and a forensic examination. Later, law enforcement officers interviewed Jurgens at his parents' home. Officers from two different counties were present, one from the county where Jurgens and his parents lived (Crawford County) and one from the county where the child lived with her mother (Monona County). Eventually, the Crawford County Attorney charged Jurgens by trial information with one count of second-degree sexual abuse and three counts of third-degree sexual abuse. Following a multi-day trial, the jury convicted Jurgens of second-degree sexual abuse but acquitted him on the three third-degree counts.

Jurgens appeals his conviction, challenging the sufficiency of the evidence and raising several evidentiary challenges. We address each in turn.

## II.    Sufficiency of the Evidence

We review sufficiency-of-the-evidence challenges for legal error.[2]  *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022).  On appeal, the jury's verdict is

---

[1] In 2022, the Iowa Department of Human Services merged with the Iowa Department of Public Health to become the Iowa Department of Health and Human Services.

[2] Jurgens contends the standard of review for challenges to the sufficiency of evidence should be de novo because the beyond-a-reasonable-doubt standard is constitutionally based. We reject this contention because the supreme court has clearly proclaimed the standard of review to be for correction of errors at law, *see State v. Slaughter*, 3 N.W.3d 540, 546 (Iowa 2024), and we are not permitted to ignore or overrule controlling precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

binding if it is supported by substantial evidence. *Slaughter*, 3 N.W.3d at 546. Evidence is substantial if it "would convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *Crawford*, 974 N.W.2d at 516 (citation omitted). In assessing whether substantial evidence supports the verdict, we "view the evidence in the light most favorable to the State, 'including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *State v. Ernst*, 954 N.W.2d 50, 54 (Iowa 2021) (citation omitted). And although Jurgens raises challenges to some of the evidence admitted at his trial, we still consider the challenged evidence in assessing the sufficiency of the evidence, regardless of whether we ultimately determine it to be admissible. *See State v. Dullard*, 668 N.W.2d 585, 597 (Iowa 2003).

At the outset of Jurgens's challenge, Jurgens asks that we require corroboration of victim testimony in sexual-abuse cases. But more than fifty years ago, our legislature amended the Iowa Code to remove such requirement. *See State v. Kraai*, 969 N.W.2d 487, 491 (Iowa 2022). A few years later, it enacted Iowa Code section 709.6 (1978), which specifically states, "No instruction shall be given in a trial for sexual abuse cautioning the jury to use a different standard relating to a victim's testimony than that of any other witness to that offense or any other offense." 1976 Iowa Acts ch. 1245, § 906. Iowa Rule of Criminal Procedure 2.21(3) explains, "Corroboration of the testimony of victims shall not be required." And our supreme court has confirmed that corroboration of victim testimony in sexual-abuse cases is not necessary. *See Kraai*, 969 N.W.2d at 491. We cannot, and will not, ignore or overrule our supreme court's precedent to say otherwise. *Beck*, 854 N.W.2d at 64.

With that, we turn to the marshaling instruction provided to the jury to address Jurgens's sufficiency challenge.[3] The marshaling instruction required the State to prove these elements: (1) "Between March 1, 2019, and March 27, 2019, in Crawford County, Iowa, [Jurgens] performed a sex act with [the child]" and (2) "[a]t that time, [the child] was under the age of 12 years." Jurgens focuses his challenge on the date range provided in the first element. He argues the date range is a material element in this particular case because it differentiated the second-degree sexual abuse count from the three third-degree sexual-abuse counts and any abuse that occurred in a county other than Crawford County.[4] Upon this premise, he argues the child never specifically testified that any abuse occurred during the specified date range, so there is insufficient evidence on which to convict him.

We need not determine whether the date range amounts to a material element here. *Cf. State v. Yeo*, 659 N.W.2d 544, 550 (Iowa 2003) (recognizing that the precise time and place of a crime is typically not a material element); *State v. Rankin*, 181 N.W.2d 169, 171 (Iowa 1970) ("Under Iowa law the state does not have to elect or prove a date certain in order to prove incest, statutory rape or

---

[3] Jurgens did not object to the marshaling instruction, so it is the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024).

[4] It is not clear to us how the specificity of the date of the offense would address Jurgens's concerns about being convicted in multiple counties for the same conduct or on multiple counts within this proceeding for the same conduct. Regardless, we note that the marshaling instruction required the jury to assess conduct occurring in Crawford County, assuring that Jurgens would not be convicted for conduct occurring in another county. And the marshaling instruction for second-degree sexual abuse was differentiated from the third-degree counts by the age of the child at the time of the charged abuse.

adultery as the exact time of the act is not material."). That is because even if the date range were a material element in this case, the State provided sufficient evidence that Jurgens abused the child during that time.

The child testified as to how the abuse began and progressed over time. She was seven years old when Jurgens first abused her. He would instruct her to manually stimulate his penis when they watched movies together but were otherwise alone. When she was a little older, around eight or nine years old, Jurgens started to show her pornography and talk about it. Jurgens talked to the child about oral sex, which they observed in the pornography, and he put his penis in her mouth. Jurgens would require the child to perform oral sex "weekly at the minimum." When the child was about nine years old, Jurgens told the child that "he wanted to try to put his penis in [her] butt." Jurgens would anally and orally penetrate the child and require her to manually stimulate his penis "multiple times a week."

The child explained that before Jurgens moved out of her home,[5] she would go with Jurgens to his parents' house weekly. And she clarified that Jurgens abused her while at his parents' house for several years.[6] She explained that when they were at Jurgens's parents' house, the abuse would often occur in shorter intervals, lasting five to ten minutes, and Jurgens would most often put his penis in her mouth.

---

[5] Jurgens testified that he moved out of the child's home in May 2019, a couple months after the time in question.

[6] A Crawford County Sheriff's deputy testified that Jurgens's parents' home is in Crawford County.

From the child's testimony about the frequency with which Jurgens would abuse her, that she went out to Jurgens's parents' house with him weekly, and that he regularly abused her at that residence, a juror could reasonably conclude that Jurgens sexually abused the child at least once while at his parents' home in Crawford County between March 1, 2019, and March 27, 2019, when the child was under the age of twelve. Accordingly, Jurgens's challenge to the sufficiency of the evidence fails.

## III.    Evidentiary Challenges

We turn next to Jurgens's evidentiary challenges. We typically review "[d]istrict court decisions on whether to admit or exclude evidence . . . for an abuse of discretion." *State v. Dessinger*, 958 N.W.2d 590, 597 (Iowa 2021). A district court abuses its discretion when its decision to admit or deny evidence is "clearly untenable or clearly unreasonable." *State v. Donahue*, 957 N.W.2d 1, 6 (Iowa 2021) (citation omitted). But when reviewing hearsay claims, our review is for legal error. *State v. Thompson*, 982 N.W.2d 116, 121 (Iowa 2022). That "is because the district court lacks 'discretion to admit hearsay in the absence of a provision providing for it' or deny the admission of hearsay if it falls within an exception." *Id.* (citation omitted).

### A.    Testimony from Sexual Assault Nurse Examiner

The nurse who examined the child at the child advocacy center testified at trial about her examination of the child. Her testimony included the following regarding a missing portion of the child's hymenal tissue[7]:

---

[7] The child reported that when she was twelve years old Jurgens put his penis in her vagina.

Q. Is that the area of missing tissue that you are representing was missing on [the child]'s hymen? A. Yes.

Q. Okay. Thank you. From a medical perspective, when you see absence of tissue, what does that tell you? A. That there was an injury that caused that absence of tissue.

Q. Okay. Is there any way to say what caused that tear? A. Just looking at the exam portion by itself, no.

Q. When you see an area like that, are you attempting to determine if it's consistent with the medical history the patient gave you? A. Yes.

Q. And in this case, was her injury consistent with the history she gave you?

[Objection from Jurgens, which was overruled by the court.]

A. Yes. It is consistent with her history of penetration.

Q. Okay. Are you able to tell when that would have happened? A. No.

Q. Or what the penetration was with? A. No.

Citing *State v. Dudley*, Jurgens contends that the nurse's statement, "It is consistent with her history of penetration," impermissibly vouched for the child's credibility. 856 N.W.2d 668 (Iowa 2014). *Dudley* does reaffirm that "an expert witness cannot give testimony that directly or indirectly comments on the child's credibility." *Id.* at 677. But *Dudley* is not applicable here. The improper testimony in *Dudley* came from an expert opining that a child's behaviors were consistent with physical manifestations of psychological trauma after being subjected to sexual abuse. *Id.* Here, there was no testimony about the child's behavior or psychological trauma. Instead, the nurse was testifying about a physical injury to the child and noting that it was consistent with the history provided by the child. *See State v. Basquin*, No. 17-0057, 2018 WL 1858378, at *2 (Iowa Ct. App. Apr. 18, 2018). And the nurse recognized she could not say what caused the injury or when the injury occurred. In short, the nurse's testimony regarding the child's physical injury did not amount to vouching testimony.

**B.     Medical Report**

Next, Jurgens argues the district court erred by admitting the sexual-assault nurse's report of her examination of the child.  Jurgens contends the report was hearsay to which no exception applied.

Hearsay is an out-of-court statement offered "to prove the truth of the matter asserted in the statement."  Iowa R. Evid. 5.801(c).  It is not admissible unless an exception applies.  Iowa R. Evid. 5.802.  Here, the district court admitted the nurse's medical report containing out-of-court statements from the child under the exception to the rule against hearsay contained in Iowa Rule of Evidence 5.803(4).

Rule 5.803(4) permits the admission of an out-of-court statement when it (1) "[i]s made for—and is reasonably pertinent to—medical diagnosis or treatment"; and (2) "[d]escribes medical history, past or present symptoms or sensations, or the inception or general cause of symptoms or sensations."  "[T]he first requirement is directed at the purpose and motive of the statement, and the second requirement is directed at the content or description of the statement.  Yet as to both requirements, the statements must also 'be reasonably pertinent to diagnosis or treatment.'" *State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016) (citation omitted).  We permit admission of statements that meet these requirements because "the circumstances of statements made for diagnosis and treatment provide 'special guarantees of credibility' and justify the exception to the rule against hearsay." *Id.* (citation omitted).  As to a child's "identification of an abuser during treatment with a healthcare professional," it is permitted under rule 5.803(4) when the child's "motive in making the statement [is] consistent with the purposes of promoting treatment" and "the content of the statement [is] such [that it] is reasonably relied

on by a [medical professional] in treatment or diagnosis." *State v. Skahill*, 966 N.W.2d 1, 8 (Iowa 2021) (citations omitted).

Jurgens contends the State failed to establish the first requirement—that the child was motivated to make the statements describing the abuse from Jurgens and identifying Jurgens as her abuser to receive medical treatment. In doing so, he contends the State provided no evidence that the child understood the importance of only sharing truthful information with the nurse, noting the medical report contains no notation of such advisory. But the record shows otherwise. When the child testified at trial about the examination process, she agreed that she knew the nurse was there to help her, she trusted the nurse, and the nurse explained to her how important it was to be truthful during the examination. And the first requirement of rule 5.803(4) is satisfied when a child makes statements "during a dialogue with a health care professional and [is] not prompted by concerns extraneous to the [child]'s physical or emotional problem, real or perceived." *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998). The circumstances surrounding the child's statements to the nurse, a health care professional, during her medical examination make evident that the child's statements were not prompted by extraneous concerns and instead related to her health. *See id.*

We move to the second requirement of rule 5.803(4)—"the content of the statement must be such [that it] is reasonably relied on by a [medical professional] in treatment or diagnosis." *Skahill*, 966 N.W.2d at 8. Jurgens argues that the nurse did not rely on the child's statements to provide her with medical treatment, noting the report's only mention of follow-up care related to waiting on test results of

vaginal cultures. But as the State highlights, the information contained in the medical report was gathered so that the nurse could provide the child with appropriate care. It was important that the nurse know who the child claimed abused her and his role as the child's stable parental figure to evaluate the child's instant emotional and physical health. *See* 7 Laurie Kratky Doré, Iowa Practice Series: *Evidence* § 5.803:4 n.22 (Dec. 2024 update) ("The identity of the abuser may have an impact on psychological injuries which accompany the offense and, therefore, treatment of those injuries. Further, doctors have an obligation to prevent child abuse victims from being returned to the abusive environment."). As Jurgens's identity was relevant to the nurse's treatment and care of the child, the second requirement is met.

The district court did not err by admitting the medical report into evidence.

**C.    Diagram**

Finally, Jurgens claims the district court abused its discretion when it admitted a diagram drawn by the nurse, contending it violated the "best evidence rule." The "best evidence rule" is a colloquial reference to Iowa Rule of Evidence 5.1002, which provides: "An original writing, recording, or photograph is required to prove its content, unless these rules or a statute provides otherwise." *See also State v. Krogmann*, 998 N.W.2d 141, 155 n.5 (Iowa 2023). "The purpose of the best evidence rule is to secure the most reliable information as to the contents of documents, when those terms are disputed." *State v. Khalsa*, 542 N.W.2d 263, 268 (Iowa Ct. App. 1995).

At issue here is a diagram drawn by the nurse to illustrate the injury to the child's hymenal tissue. The nurse viewed the injury using a colposcope—a

magnification device—during her examination of the child. The nurse took photographs of the injury at that time. While the nurse referenced the photographs when drawing the diagram, she relied on her memory of what she observed during her examination of the child to draw the diagram. Jurgens argues the photographs rather than the nurse's diagram should have been admitted to show the injury to the child, so admission of the diagram violated the best-evidence rule.

But Jurgens's claim fails because the best-evidence rule is not applicable in this instance. The purpose of the diagram exhibit was to depict the injury to the child, not the contents of the photographs of the injury to the child. *See Krogmann*, 998 N.W.2d at 155 n.5. "The [photographs] may have been, in layperson's terms, 'the best evidence' of that" injury, but that does not mean admission of alternative evidence of that injury implicated the best evidence rule. *See id.* Moreover, the nurse's diagram was not created to reflect the photographs; she drew the diagram to reflect the injury she personally observed during her examination of the child's genitals.

## IV.    Conclusion

We have considered all the arguments contained in Jurgens' appellate briefing, whether or not detailed in this opinion, and conclude all his claims are without merit. Jurgens's conviction for second-degree sexual abuse is supported by substantial evidence, and all his evidentiary challenges fail. Accordingly, we affirm his conviction.

**AFFIRMED.**